440 So.2d 383 (1983)
COMMERCIAL UNION INSURANCE COMPANY, Appellant,
v.
The R.H. BARTO COMPANY, A DIVISION OF ATLAS AIR CONDITIONING CORPORATION, Appellee.
No. 81-1512.
District Court of Appeal of Florida, Fourth District.
September 21, 1983.
Rehearing Denied November 21, 1983.
*384 Richard A. Sherman of Wicker, Smith, Blomqvist, Davant, Tutan, O'Hara & McCoy, Miami, for appellant.
Edna L. Caruso, P.A., and Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for appellee.
DOWNEY, Judge.
Appellant, Commercial Union Insurance Company, has perfected this appeal from a judgment of the trial court finding Commercial Union liable to appellee, The R.H. Barto Company, for breach of an insurance contract in refusing to defend its insured Barto.
The factual background reflects that Barto entered into a subcontract with an owner, Ecclestone, to install the air conditioning equipment in towers A and B of the Forum III office complex in West Palm Beach. After the building was occupied the air conditioning equipment continually malfunctioned even after repair and replacement. Eventually, Ecclestone sued Barto and Dunham-Bush, Inc., the manufacturer of the air conditioning equipment, seeking damages for expenses incurred in repairing and replacing the malfunctioning equipment and for the loss of rentals resulting from lost tenants. Barto notified its insurance *385 carrier, Commercial Union, and demanded the carrier assume defense of the suit; however, Commercial Union refused to defend Barto, contending that the policy in question did not cover the damages which Ecclestone sought to recover. The Ecclestone-Barto suit was ultimately settled and the present suit was instituted by Barto against Commercial Union for Barto's damages resulting from Commercial Union's breach of contract in refusing to defend Barto.
It is axiomatic that an insuror's duty to defend is determined by the allegations of the complaint filed by a third party against the insured. Klaesen Brothers v. Harbor Insurance Co., 410 So.2d 611 (Fla. 4th DCA 1982); Auto-Owners Insurance Co. v. Jones, 397 So.2d 317 (Fla. 4th DCA 1981); Buchwald v. Hartford Accident & Indemnity Co., 319 So.2d 164 (Fla. 3d DCA 1975). Even though some of the claims made by the third party are not within the coverage, the insuror has the duty to defend as long as any of the claims made are covered by the policy. 31 Fla.Jur.2d Insurance § 822. It therefore is necessary to look to both the complaint against the insured and the provisions of the policy to determine whether a defense is required by the carrier.
The Ecclestone complaint charged that Barto had installed the air conditioning equipment knowing what was required of it but that the equipment was inadequate. It broke down continuously; required constant repair and eventually replacement but even then it failed to meet the needs of the buildings and their occupants. As a consequence it is alleged that Ecclestone was required to expend large sums for labor and materials to repair and replace the equipment. In addition, the complaint alleges Ecclestone "lost rentals, tenants, and the opportunity to obtain other and additional high quality business and commercial tenants."
The Commercial Union policy is known as a Comprehensive General Liability policy. It provides that the company will pay on behalf of the insured all sums which the insured becomes obligated to pay because of "property damage" or bodily injury to which this insurance applies caused by an "occurrence." An occurrence is defined in the policy as:
[A]n accident, including continuous or repeated exposure to conditions, which results in property damage neither expected nor intended from the standpoint of the insured.
Property damage is defined as:
(1) Physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) Loss of use of tangible property which has not been physically injured or destroyed, providing such loss of use is caused by an occurrence during the policy period.
Barto contends that the claim made by Ecclestone falls within the foregoing provisions because the allegations of the complaint refer to an occurrence, i.e., "an accident, including continuous and repeated exposure to conditions, which results in ... property damage neither expected nor intended from the standpoint of the insured." The property damage envisioned by Barto is the loss of use of parts of its office building due to inadequate air conditioning which caused the offices to become uninhabitable.
Commercial Union on the contrary argues that its policy simply does not cover the type of claim made by Ecclestone; a claim based on the fact that the air conditioners did not work right. The carrier contends there was no occurrence because there was no accident. Furthermore, there are exclusions which would eliminate this coverage if it pertained in the first instance. For example, the policy further provides:
Exclusions
This insurance does not apply:
(h)[1] to loss of use of tangible property which has not been physically injured or destroyed resulting from

*386 (1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement or
(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;
but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;
(i) to property damage to the named insured's products arising out of such products or any part of such products;
(j) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
(k) to damages claimed for the withdrawal, inspection, repair, replacement of the named insured's products or work completed by or on behalf of the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known defect or suspected defect or deficiency therein.
A further exclusion is contained in subsection (a) which provides that the insurance does not apply:
(a) to liability assumed by the insured under any contract or agreement except an
incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.
This type of insurance coverage is described in a well considered opinion in Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 405 A.2d 788 (1979), cited favorably by the Supreme Court of Florida in LaMarche v. Shelby Mutual Insurance Co., 390 So.2d 325 (Fla. 1980). We learn from those opinions that a comprehensive general liability policy is intended to protect an insured from injury incurred by a third party resulting from the insured's faulty workmanship and material. It is not intended to protect the insured from liability for replacement or repair of the defective work or material itself. As the Supreme Court stated in LaMarche:
Rather than coverage and payment for building flaws or deficiencies, the policy instead covers damage caused by those flaws.
Perhaps the best explanation of the intended coverage is found in Weedo, supra, quoting from the Nebraska Law Review:
The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against.
The cases make clear that the risk a contractor takes that he will do defective work or furnish inadequate material is a business risk not insured against. It is the more extensive liability he may incur to others due to injury to them resulting from his defective work which is the coverage extended by this type of policy. At the risk of belaboring the point we quote an illustration suggested by the author of Weedo, supra:

*387 An illustration of this fundamental point may serve to mark the boundaries between "business risks" and occurrences giving rise to insurable liability. When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case. The happenstance and extent of the latter liability is entirely unpredictable  the neighbor could suffer a scratched arm or a fatal blow to the skull from the peeling stonework. Whether the liability of the businessman is predicated upon warranty theory or, preferably and more accurately, upon tort concepts, injury to persons and damage to other property constitute the risks intended to be covered under the CGL.
Adverting to the factual situation in the present case, Barto was charged by Ecclestone with installing defective equipment which, among other things, caused Ecclestone to be unable to use portions of his office building for rental purposes. This constituted an occurrence within the meaning of the policy because it involved the continuous or repeated exposure to conditions which in turn caused the office building to become in part unrentable. Thus, Ecclestone lost the use of that property even though it was not physically damaged. Had Ecclestone's claim against Barto involved nothing but the cost of repairing or replacing the deficient equipment that would have fallen within the business risk dichotomy of this type of insurance and coverage would not extend to that loss. However, the claim is for loss of use of other tangible property caused by the defective equipment and repairs.
Thus it appears Ecclestone's claim fits within the general coverage afforded by the policy unless it falls within one of the exclusions in the insurance contract. Exclusion (m) provides:
This insurance does not apply:
(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement or
(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;
but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;
It is apparent that the claimed damage falls clearly within the exclusion because it involves a loss of use of tangible property (loss of use of the office space) not physically injured or destroyed, resulting from the failure of the insured's (Barto's) products or work to meet the level of performance warranted or represented. But that does not end the story because the exclusion also includes an exemption which goes on to provide that the exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work after such products or work have been put to use by any person other than the insured. Paragraph 11 of Count I of the complaint alleges:
11. That despite the foregoing, the air conditioning equipment supplied and installed as aforesaid was not suitable, was not merchantable, did not perform normally, used excessive amounts of electricity while struggling to meet the normal *388 requirements of use, has been subject to frequent and repetitive breakdown and even though major portions of the equipment have been replaced by Defendants DUNHAM-BUSH and BARTO the replacement equipment has been subject to the same deficiencies, excessive electrical use, overloading and breakdown, and both the original and replacement equipment have repeatedly failed to produce specified capacity under normal conditions of operation in this climate.
The closest those allegations come to meeting the policy requirement of sudden and accidental physical injury to or destruction of the insured's product or work is that the equipment frequently broke down and some of it was replaced. In our considered opinion those allegations do not measure up to sudden and accidental physical injury or destruction. Therefore, the exemption does not apply; the exclusion does apply and Ecclestone's claim was excluded from this policy.
Appellee points to the evidence wherein Mr. Barto testified to an occasion when the equipment ruptured, and to certain occasions when it did not function. However, appellant is charged with breaching its duty to defend. There is no duty to defend if the allegations of the injured party's complaint do not bring the claim within the provisions of the defendant/insured's policy. Federal Insurance Co. v. Appelstein, 377 So.2d 229 (Fla. 3d DCA 1979). It does not suffice to say that later on in the proceeding the evidence showed that the injured party really did have a claim against the insured which was covered by the insured's policy. As stated in 7c Appelman, Insurance Law and Practice § 4683.01 at pg. 63:
[T]he determination in regard to the duty to defend is made at the time suit is brought and not after it is reduced to judgment.
We therefore hold that the allegations of the Ecclestone complaint did not state a claim against Barto requiring appellee to defend that action. Accordingly, the judgment appealed from is reversed.
REVERSED.
HURLEY, J., and GEIGER, DWIGHT L., Associate Judge, concur.
GLICKSTEIN, J., recused himself after oral argument.
NOTES
[1] This exclusion appears as section (h)(1) & (2) in the general comprehensive liability policy and also in a contractual liability policy endorsement as section (m)(1) & (2).