**TRANS CARIBBEAN LINES, INC., Et Al., Plaintiffs,**

v.

**TRACOR MARINE, INC., Et Al., Defendants,**

**Kurt's Marine Diesel, Inc., Defendant-Third Party Plaintiff-Appellant,**

**Continental Insurance Co., Third-Party Defendant/Appellee.**

No. 83–5531.

United States Court of Appeals, Eleventh Circuit.

Dec. 10, 1984.

---

4. At oral argument, Maritime's attorney conceded that the cargo was taken off the ship by Maritime, as agent for American.

Melanie G. May, Bunnell, Denman & Woulfe, P.A., Fort Lauderdale, Fla., for defendant-third party plaintiff-appellant.

Corlett, Merritt, Killian & Sikes, P.A., Leanne J. Frank, Miami, Fla., for third-party defendant/appellee.

Before RONEY and VANCE, Circuit Judges, and SIMPSON, Senior Circuit Judge.

SIMPSON, Senior Circuit Judge:

The parties agree as to the pertinent historical facts. Kurt's Marine Diesel, Inc., (Kurt's) a Florida Corporation, purchased a manufacturer's and contractor's liability insurance policy from Continental Insurance Co., an insurer licensed to do business in the State of Florida. Kurt's was subsequently sued by International Trans Caribbean Navigation, Inc., and Trans Caribbean Lines, Inc., the Panamanian corporations which respectively owned and operated the M/V CARIBE FREEZE. The complaint alleged, *inter alia*, that the plaintiffs had hired Kurt's to supervise co-defendant Tracor Marine, Inc., in repairing the ship's engines at Tracor's facilities in Fort Lauderdale, Florida, that Kurt's negligently performed the contract and, as a result of Kurt's negligence, the ship was taken out of commission for repairs. Plaintiffs sought $755,000.00 damages for costs and expenses incurred in obtaining satisfactory repairs and for the lost use of the vessel. Continental originally undertook Kurt's defense but later disclaimed coverage and withdrew from the case. Kurt's responded with a third party complaint seeking damages to the limits of its insurance coverage as well as costs and attorneys' fees incurred in both the prosecution of its third party claim and the defense of the underlying suit. Continental denied coverage and raised two defenses: (1) the damages sought were specifically omitted from coverage by policy exclusions, and (2) the cause of those damages (negligent supervision) alleged in the complaint did not fall within the policy definition of an "occurrence", the peril to property against which

Continental insured Kurt's.[1] Both parties moved for summary judgment. The district judge granted Continental's motion on the grounds that the policy did not insure Kurt's against claims of "negligent supervision".

There is no property damage liability under this policy unless the damage was caused by "an occurrence". Kurt's argues that the occurrence was a negligence in supervising the work of Tracor. The policy defines occurrence as "exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Kurt's negligence could well cause an accident or occurrence, but it is difficult to see how it could be one.

Kurt's appeals the final judgment dismissing its third party claim which the court subsequently issued pursuant to Fed. R.Civ.P. 54(b). Continental defends that opinion and reasserts its argument that policy exclusions deny coverage of the damages claimed. With admirable candor Kurt's has conceded before this court that a policy exclusion denies coverage of costs incurred in repairing the M/V CARIBE FREEZE. We therefore limit our discussion to whether the district judge committed error in dismissing the third party claim insofar as it applies to the two plaintiff corporations' claims for damages for the lost use of the vessels allegedly caused by Kurt's negligent supervision of Tracor.

 The construction of general (non-maritime) insurance contracts is governed by substantive state law. *Dempsey v. Auto Owners Ins. Co.*, 717 F.2d 556, 559 (11th Cir.1983). The parties have not raised any choice of law issue and appear to agree that the law of Florida, the forum state, governs their dispute even though the appellant has cited case law from many jurisdictions as presumably persuasive authority. Regardless, the record reveals that Florida law controls this case. A federal district court is bound to apply the conflict of laws rules prevailing in the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Florida applies its own laws to interpret policies which are purchased and delivered in that state. *Sovereign Camp Woodmen of the World v. Mixon*, 79 Fla. 420, 84 So. 171 (1920). Though the Supreme Court of Florida has not decided whether faulty workmanship may constitute an "occurrence" if it damages the property of another, we may rely on the opinions of the intermediate state courts which have construed "occurrence" as that term is employed in policies which are practically identical to the instant policy. *Bradbury v. Wainwright*, 718 F.2d 1538 (11th Cir.1983). At oral argument, we discovered an apparent conflict between two Florida intermediate courts with differing territorial jurisdiction, the First and Fourth District Courts of Appeal. See, *Fla.Stat.* §§ 35.01, *et seq.* (1983). In *Travelers Ins. Co. v. C.J. Gayfer's & Co.*, 366 So.2d 1199 (1st Dist.Ct.App.Fla.1979), the insured contractor installed a drainage system in Gayfer's store. After the insured's policy with Travelers Insurance Company expired, a joint in the drain system failed discharging rainwater into the store and causing Gayfer's to temporarily lose the

---

**1.** The Policy provides in pertinent part:

The company will pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages because of .... property damage .... to which this insurance applies ..., caused by an occurrence and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such ... property damage, even if the allegations of the suit are groundless, false or fraudulent...

\* \* \* \* \* \*

'occurrence' means an accident, including continuous or repeated exposure to conditions which results in ... property damage neither expected nor intended from the standpoint of the insured);

\* \* \* \* ' \* \*

'property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period....

use of the premises. Gayfer's named both the insured and the insurer as defendants. Travelers defended on the basis that there had been no "occurrence" while the policy was in force. Gayfer's argued that the negligent installation was itself an "occurrence". The trial judge agreed and entered summary judgment in Gayfer's favor. On appeal, the First District Court of Appeal rejected Gayfer's argument.

..... [T]he phrase 'caused by an occurrence' informs the insured that an identifiable event other than the causative negligence must take place during the policy period. The term 'occurrence' is commonly understood to mean the event in which negligence manifests itself in property damage or bodily injury and it is used in that sense here.

*Id.* at 1202.

The Fourth District Court of Appeal reached a contrary conclusion in *Commercial Union Ins. Co. v. R.H. Barto Co.,* 440 So.3d 383 (4th Dist.Ct.App.Fla.1983) *cert. denied,* 451 So.2d 850 (1984). In *Commercial Union,* a contractor installed air conditioning equipment in two office towers. After the building was occupied the equipment continually broke down. The building owner sued the contractor which demanded that its insurer Commercial Union defend the suit. Commercial Union denied coverage. The suit was thereafter settled and the contractor sued Commercial Union for the costs of defense. The trial court entered judgment for the insured. In its opinion, the Fourth District held that there had been an "occurrence" without identifying any event other than the causative negligence.

Barto was charged by Ecclestone with installing defective equipment which, among other things, caused Ecclestone to be unable to use portions of his office building for rental purposes. *This constituted an occurrence within the meaning of the policy because it involved the continuous or repeated exposure to conditions which in turn caused the office building to become unrentable......* [emphasis added].

*Id.* at 387.

■ When presented with such conflicting authority we would prefer to refer the unsettled issue of Florida law to that state's Supreme Court. See, e.g., *Scheinberg v. Smith,* 659 F.2d 476 (5th Cir.1981). However, in this case certification is inappropriate. Article V § 3(b)(6) of the Florida Constitution does not grant the Florida Supreme Court unlimited power to review questions of law certified by United States Courts of Appeals. The question must be "determinative of the cause." *Id.* The judgment dismissing the complaint may be upheld if district court can be sustained on any grounds. *Weeks v. Remington Arms Co.,* 733 F.2d 1485 (11th Cir.1984). *Bickford v. International Speedway Corp.,* 654 F.2d 1028, 1031 (5th Cir.1981). An alternative ground appears in the record.

■ We affirm the judgment of the district court because an exclusion in the policy totally denies coverage of the damages Kurt's seeks. Therefore, the third party complaint must fail, regardless of whether there was an occurrence. The exclusion was raised as a defense by Continental and both parties have argued their interpretations of its meaning before this Court. We see no necessity to remand the case for further action by the district court.

That clause ("exclusion m") provides:
This insurance does not apply: (m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement or
(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's prod-

ucts or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured; . . . .

The Fourth District Court of Appeal construed an identical contract clause in *Commercial Union*, supra, 440 So.2d 387, the only Florida case which is favorable to Kurt's on the "occurrence" issue. That court applied the plain language of the exclusion to the facts and held that the policy did not cover claims for the lost use of a building due to the continual failure of the defective and inadequate airconditioning installed by the insured. Though the negligent installation was an "occurrence", and the building was unusable, the court held that there was no coverage for the damages claimed because the exclusion limited coverage to claims in which the property had suffered physical damage and the exception to the exclusion which allowed coverage of claims involving "sudden and accidental physical injury to the insured's products or work", did not apply to repeated breakdowns of the air conditioning system. 440 So.2d at 387–388. Kurt's admits that this second holding in *Commercial Union* is not favorable to its claim but seeks to distinguish the case.

First Kurt's argues that the allegations do not fall within the exclusion because its work product, the supervision of Tracor, was injured by the vessel's failure to perform. We are unable to see any merit in this argument or conceive of a situation in which the act of "supervision" could be in any way "injured" once that act has been completed.

Next Kurt's argues that the allegations of "negligent supervision" do not fall within the exclusion because the defendants are alleged to have committed wrongs other than the "lack of performance" or "inadequate performance", claims which subsections (1) and (2) of exclusion m omit from coverage. Appellant relies upon *Honeycomb Systems v. Admiral Ins. Co.*, 567 F.Supp. 1400 (D.Me.1983) which construed an identical exclusion and held:

This exclusion distinguishes between a physical breakdown of the insured's product and a mere failure of the product to perform as well as warranted, presumably because the latter is a typical business risk whereas the former is more likely to have catastrophic consequences. Id. at 1407.

Appellant argues that the court's interpretation of the exclusion in *Honeycomb Systems* would remove the instant complaint from exclusion m because its supervision was allegedly a complete failure. We fail to see how *Honeycomb Systems* could apply to the instant case in which the insured's "product", supervision, is an intangible which is not subject to "physical breakdown" and when no such breakdown is alleged. Moreover, we are *Erie*-bound to follow Florida law and find no support for this argument in the law of that state.

Finally appellant argues that the exclusion does not apply to its claim for the lost use of property because, by its terms, it is inapplicable to claims in which the property was "damaged". Kurt's asserts that the ship must be considered "damaged" because it remained immobile as a result of the engine failure.

In support of its argument, appellant cites *Todd Shipyards Corp. v. Turbine Service, Inc.*, 674 F.2d 401 (5th Cir.) cert. denied 459 U.S. 1036, 103 S.Ct. 447, 448, 74 L.Ed.2d 602, 603 (1982). *Todd Shipyards* provides no support to Kurt's position. There, the court found that an exclusion identical to exclusion m did bar coverage where Todd was alleged to have damaged the ship's turbines in attempting repairs and the damage was allegedly caused by a sudden and accidental injury which occurred during the river trials which followed the repairs. *Todd Shipyards* merely applies the plain wording of the exclusion to the allegations of the complaint and does not even imply that a ship is injured or damaged merely because it remains immobile due to inadequate repairs.

We have found no Florida case which conflicts with the *Commercial Union* court's interpretation of exclusion m.

Kurt's has failed to distinguish the allegations of the complaint filed in the instant case from the facts stated in *Commercial Union,* in which the court held that the exclusion denied coverage. Consequently, we affirm the judgment entered in favor of the insurer dismissing the insured's third party claim.

AFFIRMED.