477 So.2d 596 (1985)
RON BURTON, INC., Juan F. Hernandez, a/K/a Pablo Rodriquez, Florida Farm Bureau Casualty Insurance Company, and Burton Citrus Harvesting, Inc., Appellants/Cross Appellees,
v.
Arthur P. VILLWOCK, As Personal Representative of the Estate of Miguel Landaverde, Deceased, Ernest Franklin Maroon, North Alabama Transportation, Inc., and Commercial Standard Insurance Company, Appellees/Cross Appellants.
No. 83-1781.
District Court of Appeal of Florida, Fourth District.
August 21, 1985.
Rehearing Denied October 29, 1985.
John W. Bussey, III, and Janet R. Delaura of Smalbein, Eubank, Johnson, Rosier & Bussey, P.A., Rockledge, for Florida Farm Bureau.
Robin A. Blanton of Moss, Henderson & Lloyd, P.A., Vero Beach, for Rodriquez and Ron Burton, Inc.
*597 Edgar A. Brown of Lloyd, Brown, Hoskins & Becht, P.A., Fort Pierce, for Burton Citrus.
David Glenny and John P. Wiederhold of Wiederhold, Moses & Bulfin, P.A., West Palm Beach, for Maroon.
Sammy Cacciatore of Nance, Cacciatore & Sisserson, Melbourne; and William F. Sullivan, Coral Gables, for intervenors, Barroso, et al.
Edna L. Caruso of Edna L. Caruso, P.A., and Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for Villwock.
David R. Rigell and R. Fred Lewis of Magill, Reid & Lewis, P.A., Miami, for North Alabama and Commercial Standard.
Jonathan L. Alpert of Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, amicus curiae for American Farm Bureau, Florida Farm, South Florida Tomato, U.S. Sugar, Florida Flower, Indian River, Florida Nurserymen, Florida Strawberry and Florida Sugar Cane.
LETTS, Judge.
This cause is one of many arising from a tragic and bizarre accident involving the head-on collision between an allegedly overloaded van, crowded with alien migrant agricultural laborers, and a tractor-trailer.
The van was one of two, leased to the same employer, proceeding north in convoy on a two-way single-lane highway. The van following stopped and blinked its lights, whereupon the lead van driver, supposing mechanical problems encountered by his companion, began to reverse south down the highway to render assistance. Unfortunately, in so doing, he edged over into the southbound lane and was struck head-on by a southbound tractor-trailer. The plaintiff, an alien agricultural worker, was killed as a result and the lawsuit which followed produced multiple party defendants, counterplaintiffs and cross-claimants.
The dramatis personae included:

Landaverde, the Plaintiff Deceased alien agricultural
 laborer.
Defendant Rodriquez Driver of lead van and crew
 chief of Burton Citrus Harvesting.
Defendant Burton Citrus Decedent's and Rodriquez's
Harvesting, Inc. employer, lessee of both vans.
Defendant Ron Burton, Inc. Owner of the vans.
Defendant Gomez Driver of the following van,
 not involved in collision.
Defendant Maroon Owner and driver of tractor-trailer
 which collided with van.
Defendant North Alabama Interstate Commerce Commission
Transportation, Inc. permit owner under which
 Maroon was operating the
 tractor-trailer.
Defendant Commercial Insurer of North Alabama
Standard Insurance Co. Transportation, Inc.
Defendant Florida Farm Insurer of the van and harvesting
Bureau Casualty Insurance interests.
Co.
Intervenors The seven injured and two
 personal representatives of
 other decedents that were co-passengers
 with Landaverde in the van.
Salome Landaverde Plaintiff's two minor children,
Antonio Landaverde who did not testify at trial.
Carlos Landaverde Plaintiff's two minor children,
Domingo Landaverde who testified at trial.

A more complete recitation of all the facts and rulings of the trial court are omitted and we address only such as are necessary to adequately support this opinion.

PREEMPTION
Perhaps the most encompassing of the trial court's rulings was the conclusion "that the Federal Labor Contractor Registration Act[1] pre-empts [sic] the Florida Workmen's [sic] Compensation Act and is in addition to and in excess of the remedies provided by the Florida Workmen's [sic] Compensation Act."
Under Florida's Workers' Compensation Law, Chapter 440.16, Florida Statutes (1981), in force on the date of the accident, death benefits to a deceased citizen employee, resident of this state, could not exceed $50,000. More to the point, compensation to a nonresident alien employee could not exceed $1,000. Thus, the court's ruling, *598 several months prior to the jury trial on liability, that these state statutory monetary limitations were preempted by federal legislation, was of enormous significance. This was particularly so as to the employer's insurance company, Florida Farm Bureau, because of a jury verdict in excess of $650,000 in favor of the decedent and his family.
Among the reasons we believe the trial court erred is that the recovery available to a deceased Florida resident citizen against his employer would be limited to $50,000. This being so, it is absurd to suppose that a nonresident alien would, or should, under identical circumstances, recover more than ten times that sum from his employer, because the latter result creates special benefits for a class of alien nonresident agricultural workers not enjoyed by other resident citizen workers. See Gutierrez v. Glaser Crandell Co., 388 Mich. 654, 202 N.W.2d 786 (1972).
Moreover, in DeCanas v. Bica, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976), the United States Supreme Court enunciated that preemption of state authority will never be presumed unless one of three reasons exist:
1. The matter is an exclusively regulated federal subject matter.
2. There is an ordained preemptive federal intent.
3. The state statute stands as an obstacle to the accomplishment of the federal act.
As to reason number one, its existence in a case such as is before us now has been rejected by the DeCanas court which specifically noted that compensation laws are within the state's legislative prerogative, thus disavowing the exclusivity of the federal subject matter. Id. at 356.
Regarding the second reason, 7 U.S.C.A. § 2051 specifically authorizes and encourages state action:
This chapter and the provisions contained herein are intended to supplement state action and compliance with this chapter shall not excuse anyone from compliance with appropriate state law and regulations. [Emphasis added.]
In the face of this above-quoted excerpt, it would be impossible to conclude that the federal government intended preemption.
Finally, as to the third reason, we do not believe the Florida legislation stands as an obstacle in the path of the federal act. Not only does this inevitably follow from a study of the first two considerations outlined above, but it is also stated in the federal act itself that its design is to provide some protection for migrant laborers. Basically, the act requires all employers to obtain a certificate of registration from the Department of Labor and file:
[W]ithin such time as the Secretary may prescribe, proof satisfactory to the Secretary of the financial responsibility of the applicant or proof satisfactory to the Secretary of the existence of a policy of insurance which insures such applicant against liability for damages to persons or property arising out of the applicant's ownership of, operation of, or his causing to be operated any vehicle for the transportation of migrant workers in connection with his business, activities, or operations as a farm labor contractor. The amount of any such policy of insurance shall be not less than the amount required under the law or regulation of any State in which such applicant operates a vehicle in connection with his business, activities, or operations as a farm labor contractor; but in no event shall the amount of such insurance be less than $5,000 for bodily injuries to or death of one person; $20,000 for bodily injuries to or death of all persons injured or killed in any one accident; $5,000 for the loss or damage in any one accident to property of others.
7 U.S.C.A. 2044.
This language, and the transcripts of hearings held on this legislation (HR 5060, General Subcommittee on Labor, Committee on Education and Labor, 88th Congress 1st Session 1963), make it clear that the federal purpose was to insure that the migrant worker had some protection while being transported from place to place because many state workers' compensation laws do not cover agricultural workers. *599 Florida's compensation law does cover agricultural workers and, in addition to all the other benefits, provides a death benefit of $1,000 to nonresident aliens. Accordingly, agricultural workers, far from being exploited by exclusion, are in fact covered by the Florida legislation which, therefore, does not appear as an obstacle to the federal intent. See also Crosby v. Regional Utility Board, City of Gainesville, 400 So.2d 1024 (Fla. 1st DCA 1981).
For all of the foregoing reasons, we therefore hold that the federal legislation does not preempt the field and that the Florida Workers' Compensation Act applies to this particular incident. The trial court is reversed as to this particular ruling.

SUBMISSION OF GROSS NEGLIGENCE TO JURY
As a corollary to the point first discussed, it was obviously error to submit the issue of gross negligence to the jury if the Workers' Compensation Law was inapplicable. No punitive damages were pled and the only justification for a jury instruction on gross negligence under the facts of this case would have been if the Florida Workers' Compensation Law had applied. In such event, Section 440.11(1), Florida Statutes (1981), allows for avoidance of the co-employee immunity upon the occasion of gross negligence. However, the trial judge had here already declared the Florida Compensation Law inapt and preempted. The consequence of the trial court's action is compellingly set forth in the Florida Farm Bureau's brief wherein it is stated:
It allowed the Plaintiff ... to use gross negligence as a sword with which to inflame the jury in argument while depriving the Defendants of a shield by way of an opportunity to explain or argue immunity. In addition, though the Plaintiff made no claim for punitive damages, the ability to punish RODRIQUEZ, and through association, the remaining Defendants, was given to the jury through the issue of gross negligence. Punish they did in rendering a verdict palpably punitive in amount: over $670,000.00 to a decedent whose demonstrated earning power was $1.00 to $2.00 a day in Mexico and minimum wage in the weeks he could find and keep work in the U.S. Submission of the issue of gross negligence to the jury for the rendering of an advisory opinion was prejudicial error to the Defendants and should be grounds for reversal.
We agree with this analysis and also reverse on this point. However in view of the outcome of this appeal we do not intend that the issue of gross negligence be foreclosed upon retrial.

CROSS-EMPLOYEE EXCEPTION
Florida Farm Bureau issued a standard policy to the owner of the lead van driven by Rodriquez containing a co-employee exception and a workers' compensation exclusion. The policy's "Definition of Insured" provides for a cross-employee exception:
The insurance with respect to any person or organization other than a named insured does not apply: (c) to any employee with respect to bodily injury to another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of an automobile in the business of such employer.
In turn, the policy exclusions provide that:
THIS POLICY DOES NOT APPLY:
(e) under Coverages A (bodily injury liability) and C (1) to bodily injury to any employee of the insured (2) to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law; ....
The policy also contained a Farm Labor Contractor's Liability Endorsement which provided that it was issued so that the policy would comply with the terms of the federal legislation. Because of the cross-employee exception to the "Definition of Insured" and Exclusion (e) of coverage, Florida Farm Bureau denied coverage under this policy to the van's lessee. It also denied coverage to the lead van's driver, since the plaintiff's death was occasioned *600 by a fellow employee in the course of his employment. The trial court, however, disagreed and ruled that the cross-employee exception and Exclusion (e) were invalid. We disagree.
The purpose of the cross-employee exception and exclusion has recently been considered by the Second District Court of Appeal in Aetna Fire Underwriters Insurance Co. v. Williams, 422 So.2d 7 (Fla. 2d DCA 1982), wherein the court stated:
As appellant points out, such exclusions as those found in appellant's policy, which are known as cross-employee exceptions and exclusions, are inserted in business policies for the benefit of the employer. An employer is required to protect its employees pursuant to the Workers' Compensation Statute, Chapter 440 Florida Statutes. The employer then protects the general public by purchasing a liability insurance policy. Because employees are already protected by Workers' Compensation, the insurance policy bought to protect the general public generally specifically excludes coverage for injuries covered by Workers' Compensation. The insurance policy premium would necessarily be higher if this were not so. These cross-employee provisions have been found not to contradict the other provisions of the policy but rather qualify the other provisions.
We approve of and adopt this statement, for it would appear that cross-employee exceptions have been uniformly upheld. See also Allstate Insurance Co. v. Anderson, 394 So.2d 461 (Fla. 3d DCA 1981), and McRae v. Snelling, 303 So.2d 670 (Fla. 4th DCA 1974).
The decedent argues that since Florida Farm Bureau agreed to provide the migrant labor coverage it should not now be heard to argue that the two above provisions cancel out the coverage. The existence of exclusions has never been held to create such an "estoppel." The exclusions do not completely cancel out coverage  coverage would have been provided for activities not in the scope of employment. While the decedent and intervenors assert on appeal that the policy language is ambiguous and therefore should be construed against the drafter, Florida Farm Bureau points out that such an argument was never raised below. Further, it would appear that the only time the exceptions and exclusions come into play is when the migrant is injured by a fellow employee within the course and scope of employment under which circumstances workers' compensation is applicable. We, therefore, hold the trial judge's invalidation of the exclusions to be reversible error.
In reversing and remanding this case based upon the foregoing we intend that a new trial may be had on the question of Rodriquez's (a/k/a Juan Hernandez) gross negligence. Burton Citrus Harvesting, Inc. is protected by the Workers' Compensation Law and Ron Burton, Inc. is likewise not a viable defendant. See Iglesia v. Floran, 394 So.2d 994 (Fla. 1981).
We find no merit in the other points on appeal.
REVERSED AND REMANDED.
ANSTEAD and DELL, JJ., concur.
NOTES
[1] 7 U.S.C.A. §§ 2041-2053.