Robert OPPENHEIM, Plaintiff,

v.

RELIANCE INSURANCE COMPANY,
a foreign corporation, Defendant.

No. 90–571–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 4, 1991.

**306**

Kimberly Sands, c/o Larry Sands, P.A., Daytona Beach, Fla., for plaintiff.

Richard G. Rumrell, Jacksonville, Fla., for defendant.

## ORDER

G. KENDALL SHARP, District Judge.

In this case, Robert Oppenheim (Oppenheim), a resident of Florida, is suing Reliance Insurance Company (Reliance), a foreign corporation authorized to do business in Florida, for improper denial of insurance coverage. In the underlying action, Oppenheim sued Dale Martin (Martin) in state court alleging personal injuries due to violation of Occupational Safety and Health Administration (OSHA) regulations. Martin is president of Dal Mar Industries, which is the named insured under a policy issued by Reliance. Martin and Oppenheim stipulated to and the state court entered a judgement in favor of Oppenheim. Martin assigned to Oppenheim any and all claims he might have had against Reliance arising out of its denial of coverage. Based on the assignment, Oppenheim originally filed this action against Reliance in state court. Reliance then requested and this court granted removal to this court, pursuant to 28 U.S.C. § 1446. This court granted the parties' joint motion to bifurcate this action and heard the issue of liability with respect to coverage first, without a jury. This court concludes that Reliance is not liable to Oppenheim for insurance coverage. In accordance with Federal Rule of Civil Procedure 52(a), this court enters this order.

## I. FINDINGS OF FACT

In 1985, Dale Martin was the sole officer, director, president and shareholder of Dal Mar (Dal Mar), a roofing repair and installation company. Robert Oppenheim was an employee of Dal Mar. On July 15, 1985, Oppenheim fell from a roof and was injured while working under Martin's supervision at a Dal Mar job site.

Reliance issued both a primary policy and an excess policy that named Dal Mar as the insured and covered the period from July 1, 1985 to July 1, 1986. In January and December 1988, Reliance advised Oppenheim that it had denied coverage and would not defend Martin against Oppenheim's claim. In March 1989, Oppenheim served Martin with a state court law suit that named Martin as the sole defendant. The same month, Reliance told Martin that it had denied coverage, based on the policy's language, and would not defend Martin in the state court case.

On December 22, 1989, Oppenheim and Martin entered into an Agreement for Settlement and Entry of Judgment (Settlement Agreement) in the state court case. On February 2, 1990, the state court entered a stipulated final judgment against Martin for three million dollars plus costs. One month later, Martin assigned to Oppenheim any rights he might have against Reliance. The Assignment of Claims and Causes of Action (Assignment of Claims) stated that it was based on and arose out of the Settlement Agreement.

## II. CONCLUSIONS OF LAW

### A. *Exception to Workers' Compensation Immunity from Suit*

Section 440.11 of the Florida Workers' Compensation Law provides that an employer's liability under workers' compensation shall be exclusive and in place of all other liability of such employer. Fla.Stat. § 440.11(1) (1989 & Supp. II 1990). Thus, because Oppenheim, as an employee, may recover under workers' compensation, he

may not sue Dal Mar, as his employer, under its insurance plan.

Under Section 440.11, employees, acting in furtherance of their employer's business, can usually claim the same immunity from suit that their employers can claim. Yet, the section excludes from immunity the acts of a fellow employee that are committed with willful and wanton disregard, unprovoked physical aggression, or gross negligence when such acts result in injury. *Id.* Although Martin was Oppenheim's supervisor, he is considered a fellow employee for the purposes of workers' compensation. *See* Fla.Stat. § 440.-02(13)(b) (1989 & West Supp. II 1990) (defining 'employee' as "any person who is an officer of a corporation and who performs services for remuneration for such corporation."). In *Streeter v. Sullivan,* 509 So.2d 268, 270 (Fla.1987), the Florida Supreme Court held that section 440.11 permits suits against corporate employees, officers, executives and supervisors as 'employees' for acts of gross negligence in failing to provide a reasonably safe place in which other employees may work. *Id.* at 269. In this case, the parties have stipulated as to Martin's status as a fellow employee. In his state court case, Oppenheim alleged that Martin acted with gross negligence in failing to comply with OSHA standards and regulations that govern supervision of roofing work. (Doc. 2, Ex. A.) In the Settlement Agreement, Martin stipulated to gross negligence. Thus, Oppenheim can sue Martin, as a fellow employee, because he is outside of the immunity usually granted to employees by the Florida Workers' Compensation Law.

*B. Double Recovery and Workers' Compensation.*

Although Oppenheim can bring suit against Martin, the suit by Martin raises certain fundamental questions of public policy. This case constitutes an attempt on the part of Oppenheim to seek double recovery for his injuries. Reliance, after issuing a policy to Dal Mar as the named insured corporation, denied a claim on the policy made by an employee, Oppenheim, because he already had received workers' compensation benefits from Dal Mar for the same injury. Oppenheim could not obtain additional benefits directly from his employer because the Florida Workers' Compensation Law gives his employer immunity from further liability. Therefore, Oppenheim endeavors to do indirectly what he cannot do directly. Oppenheim seeks to recover from his employer's insurance carrier by suing Martin, Dal Mar's president, as a fellow employee which places Martin outside the Florida Workers' Compensation Law.

Oppenheim was entitled to Workers' Compensation benefits and received them. In *Bevans v. Liberty Mut. Ins. Co.,* 356 F.2d 577 (4th Cir.1966), a case similar to the case at bar, the court aptly points out the policy implications of allowing recovery from both workers' compensation and the employer/fellow employee's insurance company. An employer is exposed to two types of injury suits. The first type of suit is internal from his employees and covered by workers' compensation or other employer liability insurance. The second type is external, involving third party injuries and protected by general liability insurance. *Id.* at 579. The insurer is likewise exposed to both types of liability in insuring an employer and must compute its premiums accordingly. *Id.* If Oppenheim is permitted to recover under both workers' compensation and under Dal Mar's insurance plan, Reliance would have to charge sufficient premiums to insure Dal Mar from both third party liability and employee liability. *Id.* In making its decision, this court has taken into account the likelihood that insurance premiums across the country might increase if double recovery is allowed in the case at bar.

*C. The Primary Policy*

*1. Choice of Law.*

Because this is a diversity action, the court applies the law of the forum state. *See Trans Caribbean Lines, Inc. v. Tracor Marine, Inc.,* 748 F.2d 568, 570 (11th Cir.1984). In this case, the substantive law of Florida governs the construc-

tion of insurance contracts. *Id.* Under Florida law, the court should construe the insurance policy in its entirety and give it the construction which reflects the intent of the parties. *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.,* 757 F.2d 1172, 1174 (11th Cir.1985).

### 2. Workers' Compensation Clause.

■ Given that Oppenheim can sue Martin as a fellow employee under the insurance policy, the court must determine whether the policy covers Oppenheim's claim. Dal Mar's insurance policy with Reliance exempts from coverage "any obligation for which the Insured or any company as its insurer may be held liable under any ... workers' compensation ... benefits law." Because Oppenheim recovered from Dal Mar under workers' compensation, Oppenheim could not recover from Dal Mar under it's policy with Reliance, based on the exclusive recovery provision under section 440.11 and the express terms of the policy.

The workers' compensation clause excludes a claim if *any* insured, whether Dal Mar or Martin, is liable under workers' compensation. Thus, Martin's liability as an "insured" in any capacity, whether as a fellow employee, employer, corporate officer, director or stockholder, falls squarely within the policy's workers' compensation exclusion.

Oppenheim contends that *Shelby v. Mut. Ins. Co. v. Schuitema,* 183 So.2d 571 (Fla. Dist.Ct.App.1966), *approved and adopted,* 193 So.2d 435 (Fla.1967), should apply to the Reliance policy. Under *Schuitema,* the name "Dale Martin" would be substituted for the words "the Insured" in the workers' compensation clause. Oppenheim argues that Martin, individually, could not be held liable under workers' compensation; and, therefore, the clause, with the substitution of names, is a nullity. The court declines to apply the *Schuitema* holding to the instant case because *Schuitema* is distinguishable in that it did not involve a suit by a fellow employee. In *Schuitema,* the plaintiff was not a fellow employee, but a customer who injured an employee in an accident. Thus, *Schuitema* is silent with regard to the operation of the Florida Workers' Compensation Law. *Id.* at 572. Because the workers' compensation clause is applicable, Reliance is not liable for coverage under the policy.

### 3. Fellow-Employee Exception.

■ Oppenheim urges the court to consider Martin a fellow employee for the purposes of placing him outside the Florida Workers' Compensation Law, but then asks the court not to consider him a fellow employee, but rather an executive office, for the purposes of determining coverage under the policy. This court declines to consider Martin a fellow employee for one purpose but not for another. Because Oppenheim deemed Martin to be a fellow employee for the purposes of bringing suit, Martin remains a fellow employee throughout the course of the suit.

The primary insurance policy, under the definition of "Persons Insured," sets forth a fellow-employee exception. The policy states,

Each of the following is an Insured under this policy to the extent set forth below:

....

5. Any employee of the Named Insured while acting in the scope of his duties as such; provided that the insurance afforded to such employee does not apply

(a) To bodily injury to another employee of the same employer arising out of or in the course of his employment.

Because Oppenheim claimed that Martin was a fellow employee in order to place Martin outside the protections of the workers' compensation immunity provision, Fla. Stat. § 440.11, Oppenheim thereby also placed Martin outside coverage of the primary insurance policy, under the fellow-employee exception. *See Streeter,* 509 So.2d at 270 (where, as here, defendants requested the court to define the term "employee" under workers' compensation to exclude corporate officers and the court held that the plain language of the statute brings corporate officers within the scope

of "employee"). Therefore, this court finds that Reliance is not liable under the primary insurance policy.

Oppenheim argues that the court ·must also apply the findings of *Schuitema*, 183 So.2d 571, to the fellow-employee exception in the Reliance policy. Again, the court declines to apply the *Schuitema* holding to the instant case because, as noted *supra*, *Schuitema* is distinguishable on the facts. Further, because Florida courts have distinguished between the fellow-employee exception, involved in the case at bar, and the employee exclusion mentioned in *Schuitema*, this court declines to apply *Schuitema* to this case. *See General Ins. Co. of Amer. v. Reid*, 216 So.2d 41, 42 (Fla.Dist. Ct.App.1968) (following *Bevans*, 356 F.2d 577, 580–581, where the court distinguished between the employee exclusion, involved in *Schuitema*, and the fellow-employee exception and noted that insurers adopted the fellow-employee exception because the exclusion, expanded, rather than reduced, coverage, making the fellow-employee exception necessary to express the clear intent of the insurer to divorce completely employer liability from insurer liability); *see generally Ron Burton, Inc. v. Villwock*, 477 So.2d 596, 600 (Fla.Dist.Ct.App. 1985), *cert. denied*, 488 So.2d 69 (Fla.Dist. Ct.App.1982); *Aetna Fire · Underwriters Ins. Co. v. Williams*, 422 So.2d 7, 9 (Fla. Dist.Ct.App.1982); *Liberty Mut. Ins. Co. v. Jones*, 427 So.2d 1117, 1118 (Fla.Dist.Ct. App.1983).

## C. The Excess Policy

### · 1. The Workers' Compensation Clause.

The excess policy, like the primary policy, contains a workers' compensation exclusion. The clause prohibits Oppenheim from recovering from the named insured because he recovered under workers' compensation. (Doc. 2, Ex. B.) See discussion of primary policy *supra*.

### 2. Fellow–Employee Exception.

The excess policy also contains a fellow-employee exception, similar to the one in the primary policy. The excess policy's fellow-employee exception clause reads as follows:

> Except insofar as coverage is available to the Insured in the underlying insurance as set out in Item A of the Schedule, this policy shall not apply:
>
> . . . .
>
> (j) to any employee with respect to injury or the death of another employee of the same employer injured in the course of such employment.

*Id.* The language above allows for coverage under the underlying policy, which is the primary policy. The primary policy does not provide coverage. The clause also makes coverage available under Item A. Item A of the Schedule does not provide coverage for the situation in which one employee injures another. Therefore, because Oppenheim sued Martin as his fellow employee, clause (j) applies and the excess policy does not provide coverage.

### 3. The Trial or Consent Requirement

■ The excess policy requires as a condition precedent to an action against the Reliance, such as the one at bar, that the insured have any claim against it finally determined either by judgment against the insured after actual trial or by written agreement between the insured, the claimant and the insurer. *Id.* The purpose of the section is to avoid collusion among the insured and the injured. Because Martin did not adhere to the policy by either having his case tried or obtaining Reliance's consent to the stipulated judgment, the excess policy is not at issue in this case.

### 4. Ultimate Net Loss

■ The excess policy also provides, under the section entitled "Limit of Liability," that Reliance is only liable for ultimate net loss. Ultimate net loss is defined as,

> the sum actually paid or payable in cash in the settlement or satisfaction of losses for which the Insured is liable either by adjudication or compromise with the written consent of the company, after making proper deduction for all recoveries and salvages collectible, but excludes all loss expenses .and legal expenses (in-

cluding attorney's fees, court costs and interests on any judgment or award) and all salaries of employees and office expenses of the Insured company or any underlying insurer so incurred.

*Id.* Ultimate net loss exists only if monies are actually paid or payable. In Oppenheim's action, no money was paid or is payable because the Settlement Agreement released Martin from liability. Inasmuch as the excess policy only covers ultimate net loss, Reliance is not liable. Further, the policy contains language to the effect that ultimate net loss must be either adjudicated at trial or Reliance must give its consent to settlement.

### 5. Assignment after Prior Release Extinguishes Bad Faith Claim for Failure to Defend

 The Settlement Agreement executed by Oppenheim and Martin, which released Martin from liability, extinguishes any right to proceed against Reliance under the excess policy. Oppenheim and Martin executed the Settlement Agreement in December 1989. Martin and Oppenheim stipulated for entry of judgment in January 1990, and the state court entered final judgment in February 1990. The Settlement Agreement stated that Oppenheim and Martin agreed to limit Martin's liability solely to any recovery against Reliance and to refrain from execution, levy, garnishment, lien or any other recovery as to any assets of Martin. After the Settlement Agreement was signed, they entered into the Assignment of Claims in March 1990. Oppenheim now raises a bad-faith claim against Reliance for refusing to defend Martin.

The Settlement Agreement acts as a complete release of the insured's claims and, therefore, bars a subsequent claim for excess damages, whether brought by the injured party or the insured, if the parties subsequently execute an assignment of claims. *Clement v. Prudential Property & Casualty Ins. Co.*, 790 F.2d 1545, 1547 (11th Cir.1986); *Fidelity & Casualty Co. v. Cope*, 462 So.2d 459, 461 (Fla.1985). If prior to any assignment of the insured's bad faith claim, the injured party releases

the insured from any further liability for the excess damages that are alleged to have resulted from the bad faith of the insurer, the bad faith is extinguished. *Clement*, 790 F.2d at 1548; *See Romano v. American Casualty Co. of Reading Penn.*, 834 F.2d 968, 969 (11th Cir.1987); *Cope*, 462 So.2d 459, 460 (citing *Kelly v. Williams*, 411 So.2d 902 (Fla.Dist.Ct.App. 1982)). Moreover, the excess policy contains no duty to defend. Because there is no duty to defend under the excess policy, Oppenheim cannot succeed with regard to his bad faith claim.

### III. CONCLUSION

Because Oppenheim obtained compensation for his injuries from workers' compensation, he cannot also recover from Dal Mar under its policy with Reliance. Nor can Oppenheim do indirectly what he cannot do directly, by looking to Martin, Dal Mar's president for a recovery. Although Oppenheim can sue Martin, as a negligent fellow-employee, the policy issued by Reliance does not provide coverage. The workers' compensation exclusion and the fellow-employee exception clauses in both the primary and excess insurance policies issued by Reliance bar Oppenheim from recovery against Reliance. Martin and Oppenheim also did not adhere to the terms of the insurance policies that required them to seek judgment after actual trial or Reliance's consent to settlement. Further, Oppenheim extinguished his bad faith claim for excess damages when he released Martin from liability. Therefore, the court FINDS FOR THE DEFENDANT, Reliance Insurance Company, and holds that Reliance is not liable for coverage under either the primary or excess policy.

It is SO ORDERED in Orlando, Florida, this 4th day of October 1991.