711 So.2d 1293 (1998)
AETNA CASUALTY AND SURETY COMPANY OF AMERICA, Appellant,
v.
DELUXE SYSTEMS, INC., OF FLORIDA, a Florida corporation, and Recordkeepers, Inc., a Florida corporation, Appellees.
Nos. 97-2429, 97-2956.
District Court of Appeal of Florida, Fourth District.
May 27, 1998.
*1294 Laura S. Douglas and Michael C. Mattson of Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., Fort Lauderdale, for appellant.
Glenn J. Waldman and Moura S. Sheron of Waldman & Feluren, P.A., Fort Lauderdale, for Appellee-Deluxe Systems, Inc.
Michael D. Stewart of Michael D. Stewart, P.A., Fort Lauderdale, for Appellee-Recordkeepers, Inc.
STEVENSON, Judge.
This is an appeal from a declaratory judgment requiring Aetna Casualty & Surety Company to defend Deluxe Systems, Inc. under a commercial general liability policy. Recordkeepers, Inc., a company engaged in the business of archive storage of business records, purchased shelving components from Deluxe and later filed suit contending that the shelving units were "leaning out," and were structurally inadequate for Recordkeepers' intended purpose. In its complaint, Recordkeepers alleged that it relied upon Deluxe's advice in selecting the shelving components, and sought damages for the replacement of the shelving components and the lost use of the storage facility during the "repair and remediation." It was not alleged that anyone or anything was physically damaged as a result of the inadequate shelving units.
In finding a duty to defend, the trial court ruled that Aetna was estopped from asserting any policy exclusion not specifically cited in Aetna's initial denial letter to Deluxe. We reverse because we find that: (1) the trial court erred as a matter of law in ruling that Aetna was estopped from asserting additional grounds for denial; and (2) the policy exclusions plainly precluded any duty on Aetna's part to defend Deluxe against Recordkeepers' lawsuit.
Deluxe sought to have Aetna defend and indemnify it in the Recordkeepers action under the "Bodily Injury and Property Damage Liability Coverage" provisions of Aetna's "Commercial General Liability" policy. The general coverage provision states:
We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
"Property damage" is defined as:

*1295 a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
In its letter refusing to defend Deluxe, Aetna cited policy exclusions (2)(k) and (2)(n). These exclusions provide:
2. Exclusions
This insurance does not apply to:
. . . . .
k. "Property damage" to "your product"[[1]] arising out of it or any part of it.
. . . . .
n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
(1) "Your product";
(2) "Your work";[[2]] or
(3) "Impaired property";[[3]]
if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.
After Aetna refused to defend, Deluxe filed this third-party complaint seeking a declaratory judgment that Aetna was policy-bound to defend it in the Recordkeepers action. In its Answer, Aetna "affirmatively pl[ed] all conditions precedent, exclusions and provisions of said policy of insurance."
Deluxe and Aetna filed cross-motions for summary judgment. Deluxe argued that neither exclusion (2)(k) nor (2)(n)the only two exclusions cited in Aetna's initial letterapply in this case, and, therefore, Aetna owed Deluxe a duty to defend. In its cross-motion, Aetna pointed out that it had specifically pled all conditions, exclusions, and provisions; accordingly, in arguing that it need not defend Deluxe, Aetna's motion for summary judgment relied upon numerous exclusions in addition to (2)(k) and (2)(n). In its final order, the trial court wrote:
The Court finds that [Aetna] is bound to only those exclusions and limitations contained in its November 25, 1995 letter to [Deluxe] which, under the circumstances of this case (noting that [Deluxe] relied upon the existence of only those disclosed limitations and exclusions in defending [Recordkeepers'] claims and prosecuting its Third Party Complaint) and in light of the allegations of [Recordkeepers'] Second Amended Complaint, the Court further determines them to be inapplicable.
Thus, the trial court concluded that Aetna has an affirmative duty to defend Deluxe in the Recordkeepers action. Aetna now appeals that ruling.

Creating coverage by promissory estoppel
In holding that Aetna was estopped from raising policy exclusions not cited in its initial correspondence, the trial court was undoubtedly applying Crown Life Insurance Co. v. McBride, 517 So.2d 660 (Fla.1987). In McBride, the supreme court recognized an exception to the general rule that estoppel *1296 may not "create or extend coverage," holding that an insurer could be promissorily estopped from denying coverage even where this would result in coverage beyond what is provided by the insurance policy itself. Id. at 661. McBride`s brand of promissory estoppel applies where the court's failure to enforce a promise by the insurer "would be virtually to sanction the perpetration of fraud or would result in other injustice." See id. at 662 (citations omitted).
The trial court found that Deluxe's reliance on the cited exclusions in preparing for litigation called for an application of McBride. We find that the trial court erred as a matter of law. In State Farm Mutual Automobile Insurance Co. v. Hinestrosa, 614 So.2d 633 (Fla. 4th DCA 1993), this court explained that McBride applies to create insurance coverage only where the insured was misled in connection with the initial acquisition of insurance. For example, estoppel is available to create coverage where, as in McBride, the insured, relying on assurances that his son's condition will be covered, allows other insurance options to lapse. On the other hand, estoppel is not available to create coverage where, as in Hinestrosa, the insurer initially agrees to defend the insured after a claim is made, but later attempts to raise an applicable exclusion:
There is a fundamental difference, at once apparent, between the use of that promissory estoppel in McBride and the kind of estoppel asserted here. The McBride estoppel is limited to circumstances surrounding the acquisition or procurement of the very contract of insurance in the first instance, and before any claim on that coverage has been asserted. The kind of estoppel asserted here and in AIU [Insurance Co. v. Block Marina Investment, Inc., 544 So.2d 998 (Fla.1989)], however, arises from events after the insurance contract has come into existence, after there has been an occurrence, and after a claim has been or is about to be made. The supreme court recognizes the possibility of a claim in the McBride circumstances, but not in the AIU facts or here.
Id. at 636 (footnote omitted)(emphasis added).
Like the insured in Hinestrosa, Deluxe's estoppel argument is based not on any promise surrounding the acquisition of insurance coverage, but is predicated solely on the insurer's belated assertion of specific exclusions "after the insurance contract has come into existence, after there has been an occurrence, and after a claim has been ... made." Indeed, Aetna's argument against the application of promissory estoppel is even stronger in this case than was the insurer's in Hinestrosa; whereas the insurer in Hinestrosa initially undertook to defend but later changed its position to the insured's detriment, Aetna's position from the very start of this litigation was that there was no coverage. Thus, promissory estoppel has no application in this case. Accordingly, in deciding whether Aetna has a duty to defend Deluxe, we must consider the entire policy, and not merely exclusions (2)(k) and (2)(n).
Commercial liability policies and inadequate products
As a matter of public policy, a commercial liability insurance contract, like Aetna's, does not cover claims for defective or deficient workmanship. See LaMarche v. Shelby Mut. Ins. Co., 390 So.2d 325 (Fla. 1980); Lassiter Constr. Co. v. American States Ins. Co., 699 So.2d 768 (Fla. 4th DCA 1997); Centex v. Prestressed Sys., Inc., 444 So.2d 66 (Fla. 3d DCA 1984).
[T]he purpose of ... comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product.

LaMarche, 390 So.2d at 326 (emphasis added). To hold otherwise, LaMarche explains, would allow a contractor to receive an initial payment for its work, and also claim insurance coverage to repair and correct deficiencies in that work. See id.
Aetna's policy includes a series of exclusions which embody the principles of LaMarche and its progeny. In addition to exclusions (2)(k) and (2)(n), reproduced above, exclusion (2)(j)(6) excludes from coverage property damage to any property that must be restored, repaired or replaced because the *1297 insured's work was incorrectly performed on it. Furthermore, exclusion (2)(m) generally removes from coverage property damage arising out of a defect, deficiency, inadequacy or dangerous condition in the insured's product.
To determine whether Recordkeepers' claims against Deluxe are covered by the instant policy, we must consider only the allegations contained within the four corners of Recordkeepers' complaint. See Commercial Union Ins. Co. v. R.H. Barto Co., 440 So.2d 383 (Fla. 4th DCA 1983). We have no trouble concluding that Recordkeepers' damage claims which relate to the purchase and installation of replacement shelving components are excluded from coverage under exclusion (2)(n), which excludes
[d]amages claimed for any loss ... incurred by others for the ... replacement, adjustment, removal or disposal of ... "[y]our product" [or] "[y]our work" ... if such product [or] work ... is withdrawn... from use by any person or organization because of a known or suspected ... deficiency [or] inadequacy....
The result is the same whether Deluxe's "work," or its "product," is considered to be the shelving components themselves or merely Deluxe's advice to Recordkeepers in selecting the shelving components, since the policy's definitions of "your work" and "your product" include warranties and representations.
Likewise, we hold that any impairment of Recordkeepers' warehouse in this case is excluded from coverage. While the storage facility is indeed "tangible property," see Black's Law Dictionary 1456 (6th ed.1990)(including real property in the definition of "tangible property"), the loss of its use pending the "repair and remediation" of the shelving system is excluded from coverage under exclusion (2)(m), which excludes
"[p]roperty damage" to ... property that has not been physically injured, arising out of:
(1) A defect, deficiency, [or] inadequacy... in "your product" or "your work"; or
(2) A delay or failure by you ... to perform a contract or agreement in accordance with its terms.
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.
In Commercial Union Insurance Co. v. R.H. Barto Co., 440 So.2d 383 (Fla. 4th DCA 1983), this court held that a substantively identical provision served to exclude a claim for lost rental income when the insured was sued for installing defective air conditioners in an office complex.[4] As in R.H. Barto, the lost use of real property in this case resulted from the insured's allegedly inadequate product, and there was no "sudden and accidental physical injury" to the insured's product which would render the exclusion inoperative. See id. at 387-88. Thus, as in R.H. Barto, this exclusion is applicable.
As all the claims set forth in Recordkeepers' complaint are excluded from coverage, we conclude that the trial court erred in determining that Aetna has a duty to defend Deluxe in the Recordkeepers action.
REVERSED.
POLEN and SHAHOOD, JJ., concur.
NOTES
[1] "Your product" is defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by ... [y]ou" and includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of `your product.'"
[2] "Your work" is defined as "[w]ork or operations performed by you" and "[m]aterials, parts or equipment furnished in connection with such work or operations," and includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of `your work.'"
[3] "Impaired property" is tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates `your product' or `your work' that is known or thought to be defective, deficient, inadequate or dangerous; or
b. You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by:
a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
b. Your fulfilling the terms of the contract or agreement.
[4] The exclusion in R.H. Barto provided:

This insurance does not apply:
(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement or
(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;
but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured.
Id. at 387.