390 So.2d 325 (1980)
Philip J. LaMARCHE and Bette LaMarche, His Wife, Petitioners,
v.
The SHELBY MUTUAL INSURANCE CO. and Clearwater Prestige Homes, Inc., Respondents.
No. 57094.
Supreme Court of Florida.
July 10, 1980.
Jan G. Halisky, Clearwater, for petitioners.
Stephen C. Chumbris of Greene, Mann, Rowe, Stanton, Mastry & Burton, St. Petersburg, for respondents.
Chris W. Altenbernd of Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, for Ins. Co. of North America, amicus curiae.
OVERTON, Justice.
This is a petition to review by certiorari a decision of the Second Decision Court of Appeal, reported as Shelby Mutual Insurance Co. v. LaMarche, 371 So.2d 198 (Fla. 2d DCA 1979). We find direct conflict with Fontainebleau Hotel Corp. v. United Filigree Corp., 298 So.2d 455 (Fla. 3d DCA 1974), cert. denied, 303 So.2d 334 (Fla. 1974). We have jurisdiction under article V, section 3(b)(3), as it existed prior to April 1, 1980.
*326 This cause concerns the coverage provided to general contractors by a comprehensive liability policy, and the question which must be decided is whether this coverage includes payment for the cost of replacing defective materials and workmanship. The district court in the instant case held no coverage should be provided. We affirm.
The relevant facts in the instant case reflect that petitioners entered into a written contract for the construction of their home with Clearwater Prestige Homes, Inc. The construction contract warranted and guaranteed all workmanship and materials for a term of five years from the date of delivery with regard to the structure. The work performed by the contractor proved to be deficient. At the time the contract was entered into, the contractor, Clearwater Prestige Homes, Inc., was insured by the respondent Shelby Mutual Insurance Company under a comprehensive liability policy stating that Shelby would pay for bodily injury or property damage for which the contractor became liable. This general coverage provision was followed by the following three exclusionary provisions:
(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warrant of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;
(n) to property damage to the named insured's products arising out of such products or any part of such products;
(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
The petitioner homeowners, as claim beneficiaries under this contract for insurance between the general contractor and the insurance company, contend that the average person would interpret subparagraph (a) as granting coverage for damages arising from a breach of warranty of fitness or a failure to perform work in a workmanlike manner. Petitioners further argue that the homeowner, as beneficiary of the insured, should be granted coverage because the policy is ambiguous. We reject both contentions. The district court was correct in concluding that an exclusion does not provide coverage but limits coverage. We fully approve the opinion of the district court in the instant case. Its decision is consistent with the majority of other jurisdictions which have considered this issue. The majority view holds that the purpose of this comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product.
To interpret the policy as providing coverage for construction deficiencies, as asserted by the petitioners and a minority of states, would enable a contractor to receive initial payment for the work from the homeowner, then receive subsequent payment from his insurance company to repair and correct deficiencies in his own work. We find this interpretation was not the intent of the contractor and the insurance company when they entered into the subject contract of insurance, and the language of the policy clearly excludes this type of coverage. Rather than coverage and payment for building flaws or deficiencies, the policy instead covers damage caused by those flaws. We agree with the explanation of this type of coverage as stated by the Supreme Court of New Jersey in Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 405 A.2d 788 (1979), in which it said:
An illustration of this fundamental point may serve to mark the boundaries between "business risks" and occurrences giving rise to insurable liability. When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the *327 homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case.
405 A.2d at 791-92. The court in Weedo wrote an exhaustive opinion on this issue, discussing the majority and minority views. We fully agree with its logic and reasoning. We disapprove the contrary view expressed by the Third District Court of Appeal in Fontainebleau Hotel Corp. v. United Filigree Corp.
For the reasons expressed, the decision of the district court in the instant case is approved.
It is so ordered.
SUNDBERG, C.J., and BOYD, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
ADKINS, J., dissents.