423 So.2d 525 (1982)
TUCKER CONSTRUCTION COMPANY, Appellant,
v.
MICHIGAN MUTUAL INSURANCE COMPANY, United States Fidelity and Guaranty Company and Michigan Mutual Insurance Company, et al., Appellees.
No. 81-1608.
District Court of Appeal of Florida, Fifth District.
December 15, 1982.
*526 Lee S. Damsker of Maney & Damsker, Tampa, for appellant.
Lamar D. Oxford and Roy B. Dalton, Jr., of Dean, Ringers, Morgan & Lawton, P.A., Orlando, for appellee Michigan Mut.
COWART, Judge.
This case involves the construction of a comprehensive general liability insurance policy.
Appellant, a general contractor and the insured under the insurance policy in question, contracted with a property owner to construct a building on State Road 17-92 south of Sanford, Florida, known as Judy's Restaurant. Appellant hired a soil testing firm which conducted soil borings on the proposed building location, reported its findings and recommended that the building foundation be built on pilings. Due to zoning regulations the building was actually constructed fifty feet west of the originally proposed and tested location.
Prior to construction, appellant purchased a general liability insurance policy with United States Fidelity and Guaranty Company (USF & G) and that policy provided coverage until February 23, 1979, although the restaurant was completed in October of 1978. Thereafter, on April 2, 1979, appellant obtained from appellee Michigan Mutual Insurance Company the comprehensive general liability insurance policy now in question.
The problem in this case arose when, after completion, the floor began to settle. Appellant, general contractor, blamed the construction defect on its subcontractor, the soil testing firm, which disputed its responsibility on the basis that the general contractor had placed pilings only under the foundation under the walls and not under the floor slab and because the building had not been constructed over the tested site. Some flow settlement occurred during the time the USF & G policy was in force and USF & G paid for some repair efforts; but when the flow further settled during the period covered by the Michigan Mutual policy, Michigan Mutual filed a declaratory action as to its rights and liabilities under its policy. The contractor appeals a summary judgment finding that the policy in question does not provide coverage for the damages to the restaurant. We affirm.
A manufacturer or a contractor or other person performing services for others faces two types of potential liability. One is contractual liability for failure to perform the contractual obligation and to deliver a product or service as agreed. The other is the usual potential tort liability attendant to all activity that results when one fails to use *527 due care and thereby causes others personal injury or property damage. As a practical matter the potential for tort liability is different and greater during the manufacturing or service performing activity than it is thereafter and different liability insurance coverage applies while the work is in progress than applies after the work is completed; but in either event, liability coverage does not cover the contractual liability involved.
Liability insurance protection for a manufacturer arising out of the process of producing or manufacturing goods is generally termed "premises liability" while liability protection coverage for the manufacturer once the goods are finished and moved away from the manufacturing premises is called "products liability." Similarly, a person who performs a service on the premises of others, such as a building contractor, can obtain coverage while his work is in progress in the form of an "operations liability" insurance policy and, after work is completed, by a "completed operations" policy. Since a "premises liability" policy provides a manufacturer with the same type of coverage that an "operations liability" policy provides the service performer, some policies lump such coverage together as "premises/operations" coverage. Likewise, "products liability" for manufacturers equates with "completed operations" coverage for the service performer. However the "premises/operations" coverage and the "products liability/completed operations" coverage are mutually exclusive, each coverage protecting against a separate liability situation and each carrying a separate premium. Where tort liability results from poor workmanship or other activity on the contractor's part, whether the contractor's liability policy provides coverage or not depends on which of the two coverages is carried and when the injury or damage occurs. A premises/operations policy does not provide coverage as to an incident or accident giving rise to injury or damages which occurs after the work is completed.[1] Of course, even if a policy appropriate to the particular liability is had, the incident or accident must occur during the policy period to be covered by the policy.[2]
Florida case law recognizes a difference between liability for injuries to the person or property of others caused by the negligent acts of the insured and damages to the product being constructed or on which the contracted services are being performed.[3] As stated by the Florida Supreme *528 Court in LaMarche v. Shelby Mutual Insurance Co., 390 So.2d 325 (Fla. 1980):
The majority view holds that the purpose of this comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product.
To interpret the policy as providing coverage for construction deficiencies, as asserted by the petitioners and a minority of states, would enable a contractor to receive initial payment for the work from the homeowner, then receive subsequent payment from his insurance company to repair and correct deficiencies in his own work. We find this interpretation was not the intent of the contractor and the insurance company when they entered into the subject contract of insurance, and the language of the policy clearly excludes this type of coverage. Rather than coverage and payment for building flaws or deficiencies, the policy instead covers damage caused by those flaws. Id. at 326.[4]
Appellant, the insured contractor, argues that his original (operations) coverage covered all damages except for property damage to work performed by, or on behalf of, itself as insured and that the emphasized phrase excluded work done by subcontractors but that when its new (completed operations) coverage was added, the phrase excluding damage caused by subcontractors was eliminated. Appellant concludes that if, as appellant contends, the damages to the restaurant were caused by the negligence of the soil testing subcontractor, then the new coverage should cover the damages resulting to the restaurant from the soil settlement. We cannot agree. Both exclusion (o) of the original premises-operations liability policy and exclusion (VI A3) [which replaced (o)] of the added coverage for completed operations, exclude property damage to work performed by the named insured. The deletion of the phrase relating to subcontractors in the exclusion in the completed operations policy makes sense because the insured contractor has presumably accepted the subcontractor's work as his own (at least so far as its potential tort liability is concerned), and has turned the completed work over to the owner by the time such a completed operations policy is operative.
In effect the applicable exclusion provides that the "completed operations" hazard coverage does not apply "to property damage to work performed by the named insured arising out of such work or any portion thereof." The words "work performed by" in this context in the policy mean the same as "the restaurant constructed by" the insured and was intended to exclude coverage of the insured's contractual liability for damages to the "work" caused by the insured's neglect or failure to complete and deliver the completed "work" in accordance with his contractual undertaking with the owner. The question of the contractor's contractual undertaking with the property owner, insofar as it relates to *529 responsibility for settlement damages to the restaurant in question, is not before this court. Since the insurance policy in question specifically excluded property damage to work performed by the named insured, damages to the restaurant are not covered by this "completed operations" liability policy and the trial court correctly entered the summary judgment which is
AFFIRMED.
ORFINGER, C.J., and DAUKSCH, J., concur.
NOTES
[1] See, e.g., Prieto v. Continental Ins. Co., 358 So.2d 851 (Fla. 3d DCA 1978) (where building collapsed after completion, damages to third parties were not covered by contractor's premises-operations liability coverage); Sandpiper Constr. Co. Inc. v. United States Fidelity and Guar. Co., 348 So.2d 379 (Fla. 2d DCA 1977) (where roof collapsed after building was completed, damages to third parties were not covered under contractor's premises-operations liability coverage). Cf. Florida Farm Bureau Mut. Ins. Co. v. Gaskins, 405 So.2d 1013 (Fla. 1st DCA 1981) (where the negligent substitution of herbicide for insecticide occurred on premises of store, damages to third party's crops were covered by store owners premises-operations liability coverage); Greenway Village South Condominium Assoc., I, II, III and IV, Inc. v. Roach, 397 So.2d 954 (Fla. 4th DCA 1981) (where contractor negligently installed gutters and down spouts so that the seals between the roof and walls were destroyed thus allowing water to cause damage inside the building, the damage to the third parties' walls occurred during construction and therefore were covered by premises-operations liability provisions of the contractor's liability insurance; however, damage to the inside of the building caused by rain occurred after construction was completed and were not covered by premises-operations liability provisions nor otherwise recoverable since the contractor did not carry completed operations coverage). See also Annot., 58 A.L.R.3d 12 (1974) [Construction and Application of Clause Excluding From Coverage of Liability Policy "Completed Operations Hazards"].
[2] See, e.g., Travelers Ins. Co. v. C.J. Gayfer's & Co., 366 So.2d 1199 (Fla. 1st DCA 1979) (where roof drainage system installed by contractor failed after contractor's insurance [including premises-operations coverage and completed operations coverage] expired, insurance company was not liable for the loss).
[3] See, e.g., American States Ins. Co. v. Villegas, 394 So.2d 222 (Fla. 5th DCA 1981); Shelby Mut. Ins. Co. v. LaMarche, 371 So.2d 198 (Fla. 2d DCA 1979), aff'd, 390 So.2d 325 (Fla. 1980). Cf., C.A. Fielland, Inc. v. Fidelity and Casualty Co. of New York, 297 So.2d 122 (Fla. 2d DCA 1974), cert. denied, 309 So.2d 6 (Fla. 1975) (where contractor negligently constructed walls such that brick veneer on the wall began to fall and collapse, the owner was entitled to recover any damages it sustained from the wall having fallen or threatening to fall, including the cost of demolishing the wall and the rental of the parking lot during demolition).
[4] To illustrate this distinction, the Florida Supreme Court quoted from the New Jersey Supreme Court case of Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 405 A.2d 788 (1979), where it was stated:

An illustration of this fundamental point may serve to mark the boundaries between "business risks" and occurrences giving rise to insurable liability. When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case. 405 A.2d at 791-92.
390 So.2d at 326-27.