444 So.2d 66 (1984)
CENTEX HOMES CORPORATION, Appellant,
v.
PRESTRESSED SYSTEMS, INC., and C.A. Gibeaut, Inc., Appellees.
No. 83-409.
District Court of Appeal of Florida, Third District.
January 17, 1984.
*67 Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern and Bruce Charles King, Miami, for appellant.
Ligman, Martin, Shiley & McGee and Andrew J. Anthony, Coral Gables, Magill, Reid & Lewis, Miami, for appellees.
Before SCHWARTZ, C.J., and HENDRY and FERGUSON, JJ.
HENDRY, Judge.
Centex Homes Corporation appeals from a final summary judgment entered in favor of appellee Prestressed Systems, Inc. ("PSI"). We reverse.
Appellant Centex was the general contractor for the construction of the Winston Towers 400 Condominium. Appellee provided and erected all precast, prestressed concrete joints and soffit beams for the building and parking garage. Two years after the building was occupied, the Winston Towers 400 Condominium Association sued appellant for construction defects in the parking garage. The lawsuit was settled with the Association and assignments were executed in favor of appellant for all claims that the Association had against the appellee. Centex then filed the instant lawsuit against appellee PSI and several other subcontractors.
The only issue before this court is whether the blanket general comprehensive liability insurance purchased by appellant to cover all of its subcontractors released appellee from its contractual obligation to provide its services in a workmanlike manner. A correlative issue is whether the existence of comprehensive liability insurance shields appellee from being held liable for the damages resulting from its own poor workmanship. The answer to both questions is, as a matter of law, no.
It is well established that the purpose of comprehensive liability insurance coverage is to provide protection for personal injury or property damage caused by the product only and not for the replacement or repair of the product. LaMarche v. Shelby Mutual Insurance Co., 390 So.2d 325 (Fla. 1980); Keller Industries, Inc. v. Employers Mutual Liability Insurance Co., 429 So.2d 779 (Fla. 3d DCA 1983); Tucker Construction Co. v. Michigan Mutual Insurance Co., 423 So.2d 525 (Fla. 5th DCA 1982); Old Republic Insurance Co. v. Sheridan, 407 So.2d 619 (Fla. 4th DCA 1981); American States Insurance Co. v. Villegas, 394 So.2d 222 (Fla. 5th DCA 1981). The policy reasons for this result are obvious. If insurance proceeds could be used to pay for the repairing and/or replacing of poorly constructed products, a contractor or subcontractor could receive initial payment for its work and then receive subsequent payment from the insurance company to repair and replace it. LaMarche v. Shelby Mutual Insurance Co., supra, 390 So.2d at 326. Equally repugnant on policy grounds is the notion that the presence of insurance obviates the obligation *68 to perform the job initially in a workmanlike manner.
Appellee argues that paragraph 9, in which appellant states that it has arranged for insurance coverage, is ambiguous. It argues that the sentence "[t]his subcontractor will be covered by such blanket insurance policy for all these risks ... ." refers to the first eight paragraphs in which the parameters of the contract are defined. In Biltmore Systems, Inc. v. Mai Kai, Inc., 413 So.2d 458 (Fla. 4th DCA 1982), the court stated:
It is fundamental that where a contract is clear and unambiguous in its terms the court may not give those terms any meaning beyond that expressed... Where ambiguity exists, however, the court should arrive at an interpretation "consistent with reason, probability, and the practical aspect of the transaction between the parties."
Id. at 459 (citations omitted). See also Wright & Seaton, Inc. v. Prescott, 420 So.2d 623 (Fla. 4th DCA 1982). We note in this regard that at all points in the contract in which insurance is mentioned, it refers only to liability insurance, and then only in the amount the subcontractor would purchase if it were responsible for providing its own insurance. Additionally, the insurance rider states that only liability insurance will be purchased and that any additional insurance must be provided by the subcontractor. Appellee makes no assertion that it would have provided insurance to cover damages resulting from its poor workmanship had it understood that such coverage was not included in liability insurance policies. In its attempt to find an ambiguity in the contract, appellee constructs a strained reading which, were it adopted, would lead to a ludicrous interpretation of plain words. We can only approve a construction which comports with logic and reason. Wright & Seaton, Inc. v. Prescott, supra, 420 So.2d at 629; Royal Continental Hotels, Inc. v. Broward Vending, Inc., 404 So.2d 782 (Fla. 4th DCA 1981).
Thus, we find that, as a matter of law, only liability insurance coverage was contemplated by the parties and that, as a matter of law, liability insurance covers bodily injury and property damage caused by the product only and does not encompass coverage for replacing or repairing defective workmanship.
Reversed.