683 So.2d 527 (1996)
HOME OWNERS WARRANTY CORPORATION and How Insurance Company, Appellants,
v.
The HANOVER INSURANCE COMPANY, Appellee.
No. 94-2209.
District Court of Appeal of Florida, Third District.
September 4, 1996.
Order Denying Rehearing December 11, 1996.
Holland & Knight and Daniel S. Pearson; Dunn, Lodish & Widom and Mitchell E. Widom, Miami, for appellants.
Denise V. Powers, Coral Gables, for appellee.
*528 Before SCHWARTZ, C.J.,[*] and COPE and GREEN, JJ.
COPE, Judge.
Home Owners Warranty Corporation and How Insurance Company appeal an adverse summary final judgment. We affirm.
The Hoffman Group of Florida was the developer and builder of [Seville Place Condominium] in Dade County, Florida. After completion, the condominium association brought suit against the developer, affiliated companies, and two construction companies, alleging construction defects.[1]
Appellee The Hanover Insurance Company had issued the developer a Commercial General Liability Policy. The developer demanded that Hanover undertake defense of the lawsuit, and indemnify the developer against any damages resulting from the lawsuit. Hanover denied coverage, concluding that the allegations of the condominium association's complaint did not come within the terms of the insurance policy. The developer paid for its own defense of the lawsuit.
Appellant How Insurance Company was the excess warranty insurer of the developer. Ultimately the suit by the condominium association was settled for approximately $1.6 million. How, the developer, and two other entities funded the settlement. Hanover did not participate.
The developer assigned its rights to How. In its capacity as assignee and also as equitable subrogee, How sued Hanover, alleging breach of the duty to defend and duty to indemnify. The trial court entered summary final judgment in favor of Hanover, and How has appealed.
"The basic law controlling this appeal is well settled. An insurance carrier's duty to defend a claim depends solely upon the allegations in the complaint." Fun Spree Vacations, Inc. v. Orion Insurance Co., 659 So.2d 419, 421 (Fla. 3d DCA 1995). See also Commercial Union Insurance Co. v. R.H. Barto Co., 440 So.2d 383 (Fla. 4th DCA 1983), rev. denied, 451 So.2d 850 (Fla.1984)("It is axiomatic that an insurer's duty to defend is determined by the allegations of the complaint filed by a third party against the insured.").
The condominium association's complaint stated claims against the developer for breach of implied warranty, negligence, violation of section 553.84, Florida Statutes, and strict liability. Each count alleged the same ten construction deficiencies. See supra note 1. Each count made a claim for damages for the sums which would be required for repair and maintenance.[2]
The comprehensive general liability policy provides, in part:
COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement.
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.... The "bodily injury" or "property damage" must be caused by an "occurrence." ...
. . . .
SECTION V  DEFINITIONS
. . . .
9. "Occurrence" means an accident, including continuous or repeated exposure *529 to substantially the same general harmful conditions.
The Florida Supreme Court in LaMarche v. Shelby Mutual Insurance Co., 390 So.2d 325 (Fla.1980), analyzed the purpose of the comprehensive general liability policy as follows:
The majority view holds that the purpose of this comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product.
... Rather than coverage and payment for building flaws or deficiencies, the policy instead covers damage caused by those flaws. We agree with the explanation of this type of coverage as stated by the Supreme Court of New Jersey in Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 405 A.2d 788 (1979), in which it said:
An illustration of this fundamental point may serve to mark the boundaries between "business risks" and occurrences giving rise to insurable liability. When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case.
405 A.2d at 791-92. The court in Weedo wrote an exhaustive opinion on this issue, discussing the majority and inority views. We fully agree with its logic and reasoning.
390 So.2d at 326-27.
As amplified by the Weedo court:
In this regard Dean Henderson has remarked:
The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained. (Henderson, ["Insurance Protection for Products Liability and Completed OperationsWhat Every Lawyer Should Know,"] 50 Neb.L.Rev. [415] at 441 [(1971) ].)
. . . .
... As we have endeavored to make clear, the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident.
Weedo v. Stone-E-Brick, Inc., 405 A.2d at 791, 796; see also Centex Homes Corporation v. Prestressed Systems, Inc., 444 So.2d 66, 67-68 (Fla. 3d DCA 1984). We conclude that there was no duty to defend in this case, nor a duty to indemnify.
Affirmed.

On Motion for Rehearing
By motion for rehearing appellants contend that they should prevail in this case because the insurance policy contains an exception to an exclusion from coverage as follows:
2. Exclusions.
This insurance does not apply to
1. "Property damage" to your product arising out of it or any part of it and *530 included in the productr-completed operations hazard.
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
The Florida Supreme Court has said, however, that "an exclusion does not provide coverage but limits coverage." LaMarche v. Shelby Mutual Insurance Co., 390 So.2d 325, 326 (Fla.1980). That being so, it would appear that the subcontractor exception eliminates subcontractors from this particular exclusion but does not, in and of itself, create coverage. We therefore deny rehearing.
Rehearing denied.
NOTES
[*] Chief Judge Schwartz did not hear oral argument, but participated in the decision.
[1] The alleged defects were:

1. Exterior walls are designed and constructed in manner which will not provide Code-required wind-resistivity.
2. Exterior walls permit water intrusion.
3. Exterior finishes are inadequate.
4. Roofs permit water intrusion and are not constructed in accordance with Code.
5. Windows permit water intrusion.
6. Exterior framing members are deteriorating.
7. Site drainage is inadequate.
8. Shower pans leak.
9. Interior walls are out of plumb.
10. Roof trusses are inadequately designed and constructed.
[2] Count I, for breach of implied warranty, asserted in addition to the sums needed for repair and maintenance, that sums would be needed "for damages caused by the defects and deficiencies." However, the complaint nowhere stated what such damages consisted of. The only specific claims alleged were those set forth in footnote 1 supra.