842 So.2d 947 (2003)
BILTMORE CONSTRUCTION CO., INC., and Central-Allied Enterprises, Inc., a continuing joint venture, by and through Biltmore Construction Co., Inc., and Central-Allied Enterprises, Inc., its coventurers, Appellants,
v.
OWNERS INSURANCE COMPANY and Auto-Owners Insurance Company, Appellees.
No. 2D01-5770.
District Court of Appeal of Florida, Second District.
March 21, 2003.
Rehearing Denied April 21, 2003.
*948 Dennis P. Thompson of Thompson & Foote, P.A., Clearwater, and Charles W. Pittman of Macfarlane, Ferguson & McMullen, Tampa, for Appellants.
Burke Lopez and Michael S. Rywant of Rywant, Alvarez, Jones, Russo & Guyton, P.A., Tampa, for Appellees.
WHATLEY, Judge.
Biltmore Construction Company and Central-Allied Enterprises challenge a final summary judgment that determined Owners Insurance Company and Auto-Owners Insurance Company (Owners) were not obligated to defend against a claim brought by Bayshore Heights Associates. We reverse because the claims made in Bayshore's complaint were potentially covered under the terms of the insurance policy issued by Owners.[1]
Biltmore Construction Company and Central-Allied Enterprises formed a joint venture (Biltmore) that constructed an assisted congregate living facility for Bayshore. Biltmore is a general contractor and Owners was Biltmore's general liability insurance carrier. The basic insuring agreement provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies. We will have the right and duty to defend any `suit' seeking those damages."
Bayshore filed a complaint against Biltmore for damages arising from the construction of its facility. Biltmore informed Owners of the complaint, and Owners denied a duty to defend or indemnify Biltmore for the claims made in Bayshore's complaint. Thereafter, Biltmore filed a complaint against Owners seeking to recover fees and costs incurred in defending the Bayshore lawsuit. Biltmore alleged that Owners had a duty to defend Biltmore pursuant to the insurance contract.[2]
Competing motions for summary judgment were filed. After a hearing, the trial court granted Owners' motion for summary judgment, finding that Owners did *949 not have a duty to defend Biltmore based on the allegations in Bayshore's original complaint.
We first note that the applicable standard of review is de novo as the interpretation of an insurance contract is a question of law. Auto-Owners Ins. Co. v. Marvin Dev. Corp., 805 So.2d 888, 891 (Fla. 2d DCA 2001). An insurer's duty to defend a complaint depends solely on the allegations in the complaint filed by a third party against the insured. Home Owners Warranty Corp. v. Hanover Ins. Co., 683 So.2d 527, 528 (Fla. 3d DCA 1996).
On appeal, Biltmore argues that Owners was obligated to provide a defense for the second count in Bayshore's complaint. Count two of the complaint alleged that Biltmore furnished and installed defective windows and that the windows, window sills, and exterior walls were improperly constructed, painted, and sealed, which permitted severe water infiltration. Bayshore further alleged that, as a result of the severe water infiltration, it suffered "damage in its business and property."
Owners argues that the claim was not covered by the policy because it fell under the following policy exclusion:
j. "Property damage" to:
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
Owners argues that there is nothing in the complaint to indicate that the "property" that was damaged was anything other than the property requiring repair due to faulty construction. See LaMarche v. Shelby Mut. Ins. Co., 390 So.2d 325, 326 (Fla.1980) ("[T]he purpose of this comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product."). We reject this argument because an insurance company must defend if "the complaint alleges facts that create potential coverage under the policy...." Grissom v. Commercial Union Ins. Co., 610 So.2d 1299, 1307 (Fla. 1st DCA 1992). "All doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured." Id. Here, the allegation that there was damage due to severe water infiltration could obviously include damage to property other than the improperly constructed windows and exterior walls, as it could include damage to carpeting and drywall. Therefore, there was potential coverage under the policy, and Owners had a duty to defend the claim.
Additionally, there is an exception to paragraph six of the exclusions, which provides that the exclusion does not apply to a completed product. Owners argues that this exception does not apply to create coverage here because there was no allegation in Bayshore's complaint that the defective work caused damage to a completed project. We disagree. The complaint specifically reads, "[S]ince the date of substantial completion, plaintiff has experienced severe water infiltration problems at the project through and around the windows and through the exterior elastomeric coating and stucco." Therefore, as the complaint alleged damage to a completed product, the exception to the exclusion applied, and Owners was obligated under the insurance agreement to provide a defense to count two of Bayshore's complaint. Thereafter, if it were learned during discovery that there was no coverage under the policy, Owners could have moved to withdraw.
*950 Accordingly, we reverse and remand this cause for further proceedings consistent with this opinion.
Reversed.
STRINGER and COVINGTON, JJ., Concur.
NOTES
[1] The insurance agreement at issue provides broad form products/completed operations coverage.
[2] Subsequently, Bayshore served an amendment to the complaint against Biltmore, and Owners acknowledged liability for the claims of Bayshore and settled those claims. However, Owners continued to refuse to pay Biltmore the fees and costs incurred before Owners acknowledged liability for Bayshore's claims.