906 So.2d 303 (2005)
J.S.U.B., INC., as partner of First Home Builders of Florida, a joint venture and Logue Enterprises, Inc., as partner of First Home Builders of Florida, a joint venture, Appellants,
v.
UNITED STATES FIRE INSURANCE COMPANY, a corporation, Appellee.
No. 2D03-134.
District Court of Appeal of Florida, Second District.
March 18, 2005.
Rehearing Denied June 23, 2005.
*304 Mark A. Boyle of Fink & Boyle, P.A., Fort Myers, for Appellants.
Joseph R. Miele and Ronald O. Armbrust of Adorno & Yoss, P.A., Ft. Lauderdale, for Appellee.
Harold R. Mardenborough, Jr. and Ginger L. Barry of McFarlain & Cassedy, P.A., Tallahassee, for Amicus Curiae Florida Home Builders Association, Inc.
David K. Miller and Bruce P. Anderson of Broad and Cassel, Tallahassee, for Amici Curiae Allstate Construction, Inc. and Brittania Homes, Inc.
SILBERMAN, Judge.
J.S.U.B., Inc., and LOGUE Enterprises, Inc., as partners of First Home Builders of Florida (the Builder) appeal a final declaratory judgment holding that insurance policies purchased from United States Fire Insurance Company (the Insurer) do not provide coverage for certain damage to homes constructed by the Builder. We conclude that the policies provide coverage and reverse.

BACKGROUND
The Builder was the general contractor on a series of homes built in Lee County, Florida. Subcontractors performed all work related to soil acquisition, compaction, and testing. After completion of construction, some homes suffered damage when the exterior walls moved or sank as a result of improper compaction of the soil, *305 improper testing of the soil compaction, poor soil or fill material, or a combination thereof. The damage included structural damage as well as damage to items placed in or affixed to the homes, such as wallpaper.
The Builder sought coverage for the damage under a commercial general liability (CGL) policy and renewal policy issued by the Insurer. The policies covered the period from April 24, 1999, through April 24, 2001. When the Insurer denied coverage, the Builder filed an action for declaratory relief, seeking a determination that the insurance policies provided coverage. The Insurer acknowledged that the policies provided coverage for damage to items that the homeowners added to the homes. However, it maintained that the policies did not cover damage to the Builder's own work or product that resulted from the Builder's or a subcontractor's faulty workmanship.
Following a nonjury trial, the trial court determined that the damage was the result of faulty workmanship caused by the subcontractors' use of poor soil, improper soil compaction, or improper testing and that the policies did not provide coverage for faulty workmanship. On that basis, the trial court entered judgment in favor of the Insurer.

POLICY PROVISIONS
The CGL policy and renewal policy (both bearing form number CG 00 01 07 98) contain the following identical, pertinent provisions:
SECTION I  COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies....
. . . .
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
(2) The "bodily injury" or "property damage" occurs during the policy period.
. . . .
2. Exclusions
This insurance does not apply to:
. . . .
j. Damage To Property
"Property damage" to:
. . . .
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
. . . .
Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".
....
1. Damage To Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

*306 This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
m. Damage To Impaired Property Or Property Not Physically Injured
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.
. . . .
SECTION V  DEFINITIONS
. . . .
8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b. You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by:
a. The repair, replacement, adjustment or removal of "your product" or "your work"; or
b. Your fulfilling the terms of the contract or agreement.
....
13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
....
16. "Products-completed operations hazard":
a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
....
(2) Work that has not yet been completed or abandoned....
....
17. "Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property....
....
20. "Your product" means:
a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
(1) You;....
....
21. "Your work" means:
a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.

STANDARD OF REVIEW AND RULES OF CONSTRUCTION
Although we give deference to the trial court's factual findings, the interpretation of an insurance contract is a question of law, and our review of the trial court's interpretation of the subject policies is de novo. Jones v. Utica Mut. Ins. Co., 463 So.2d 1153, 1157 (Fla.1985); Biltmore *307 Constr. Co. v. Owners Ins. Co., 842 So.2d 947, 949 (Fla. 2d DCA 2003); Vollmer v. Key Fin. Corp., 810 So.2d 966, 968 (Fla. 2d DCA 2002). We are required to construe an insurance policy in accordance with its plain language. Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla.2003). If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the policy is ambiguous. Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000). In Anderson the Florida Supreme Court reiterated the following:
Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy. Likewise, ambiguous insurance policy exclusions are construed against the drafter and in favor of the insured. In fact, exclusionary clauses are construed even more strictly against the insurer than coverage clauses.
Id. (citations omitted). Additionally, "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Id.

ANALYSIS OF COVERAGE PROVISIONS
The trial court determined that the subject CGL policies do not provide coverage based on the Florida Supreme Court's decision in LaMarche v. Shelby Mutual Insurance Co., 390 So.2d 325 (Fla.1980), and its progeny. In the past, Florida courts have generally taken the position that CGL policies do not cover the cost of replacement of a builder's or general contractor's defective materials or workmanship. See, e.g., Auto-Owners Ins. Co. v. Marvin Dev. Corp., 805 So.2d 888, 893 (Fla. 2d DCA 2001)[1]; Lassiter Constr. Co. v. Am. States Ins. Co., 699 So.2d 768, 770 (Fla. 4th DCA 1997); Home Owners Warranty Corp. v. Hanover Ins. Co., 683 So.2d 527, 529 (Fla. 3d DCA 1996). Florida courts have also extended this general rule to defective work performed by a subcontractor on a general contractor's behalf. Tucker Constr. Co. v. Mich. Mut. Ins. Co., 423 So.2d 525, 528-29 (Fla. 5th DCA 1982).
On appeal, the Builder challenges the trial court's determination that the policies do not cover the losses, arguing that (1) in 1986, several years after LaMarche was decided, portions of the standard language in CGL policies changed; and (2) in State Farm Fire & Casualty Co. v. CTC Development Corp., 720 So.2d 1072 (Fla.1998), the Florida Supreme Court effectively broadened CGL coverage by expanding the interpretation of what constitutes an "accident" when that term is not defined in an occurrence-based policy. The Builder argues that the Insurer's policies provide broader coverage than the policy that was at issue in LaMarche and, therefore, that the trial court erred in concluding that no coverage existed. We agree.
In LaMarche, the supreme court reviewed this court's decision in Shelby Mutual Insurance Co. v. LaMarche, 371 So.2d 198 (Fla. 2d DCA 1979). Our decision specified that we were not deciding whether the CGL policy expressly provided coverage for the damage that had been incurred, but rather, we determined that the policy exclusions that were at issue did not create an ambiguity. Id. at 201. In its review of our decision, the supreme court also focused on the exclusionary language and concluded that the policy excluded coverage for building flaws or deficiencies *308 and "instead covers damage caused by these flaws." LaMarche, 390 So.2d at 326.
The CGL policies at issue here are standardized policies promulgated by the Insurance Services Office, an insurance industry service organization. The language contained in the "Insuring Agreement" portion of the policies is similar, though not identical, to the policy language involved in LaMarche. See 371 So.2d at 198-99. However, the policies contain significantly different exclusions than those that were addressed in LaMarche. Prior to 1986 it was common for CGL policies to exclude coverage for damages occurring after the insured completed its work, but "[i]t is now common for such policies to include `products/completed operations hazard' coverage." 9 Couch on Insurance § 129:14 (Lee R. Russ & Thomas F. Segalla eds., 3d ed.2004), WL COUCH § 129:14. A completed operations exclusion bars coverage for injuries that occur after the insured completed its work on a particular operation. Id.
The policies here contain broad insuring language covering property damage that is caused by an "occurrence" in the coverage territory that takes place during the policy period. The term "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The term "accident" is not defined in the policy. However, in CTC Development, the supreme court considered "whether the term `accident' in a liability policy, which term is not otherwise defined, should be defined to include not only `accidental events,' but also injuries or damages that are neither expected nor intended from the standpoint of the insured." 720 So.2d at 1074. In holding that it does, the court receded from an earlier, more restrictive definition of "accident" that the court had adopted in Hardware Mutual Casualty Co. v. Gerrits, 65 So.2d 69 (Fla.1953). See CTC Development, 720 So.2d at 1076.
In CTC Development, the event giving rise to the claim was the construction of a residence in violation of restrictive covenants. The court focused on whether the event constituted an "occurrence" under the policy, which was broadly defined to include "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage." Id. at 1073.
The court noted that in Gerrits it had limited the definition of "accident" by holding that the term did not include the natural and probable consequences of the insured's deliberate actions. Sometime later, the insurance industry changed the standard comprehensive general liability policy "by substituting the word `occurrence' for `accident,' and by defining `occurrence' to mean `an accident, including continuous or repeated exposure to conditions, which result[s] in bodily injury or property damage neither expected nor intended from the standpoint of the insured.'" Id. at 1075 (quoting 7A John Alan Appleman & Walter F. Berdal, Insurance Law and Practice § 4492, at 14-15 (rev. ed.1979) [hereinafter Appleman]) (alteration in original). In CTC Development, the court reasoned that under the foregoing definition an occurrence included not only an accidental event but also "the unexpected injury or damage resulting from the insured's intentional acts. Thus, if the resulting damages are unintended, the resulting damage is `accidental even though the original acts were intentional.'" Id. (quoting Appleman § 4492.02, at 33) (citations omitted).
The court concluded that where the term "accident" is not defined in a liability policy, it "encompasses not only `accidental events,' but also injuries or damage neither expected nor intended from the stand-point *309 of the insured." Id. at 1076. On that basis, the court held that a contractor's construction of a home in violation of setback requirements  under the mistaken belief that it had obtained a variance for the construction  was an occurrence covered under the policy. Id.
The pertinent insuring provisions in the policies here are similar to those in CTC Development, and the insurance covers "property damage" only if such damage is "caused by an `occurrence' that takes place in the `coverage territory'" during the policy period. As with the CTC Development policy, the policies here define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," but the term "accident" is undefined. The Insurer argues that workmanship deficiencies that resulted in later damage to the homes should not be considered to be the result of an accident. However, the Insurer's broad policy language that defines an "occurrence" but does not define an "accident," and the broad definition of "accident" adopted in CTC Development, lead to the conclusion that the occurrences here fall within the coverage provisions of the policies.
Based on the foregoing analysis, we cannot agree with the Insurer's contention that LaMarche and its progeny[2] compel the conclusion that the polices do not provide coverage for the Builder's claims. Other courts[3] and commentators[4] have also come to the conclusion that CGL policies provide coverage in circumstances such as those present here.
In considering the scope of the insurance coverage, we must also consider the exclusions contained in the policies. In CTC Development the supreme court reiterated that "exclusionary clauses cannot be relied upon to create coverage." 720 So.2d at 1074. However, it also noted that *310 the principles governing the construction of insurance contracts require that policy provisions be read in pari materia, and that "[r]eading the coverage provision of the policy together with the exclusionary clause could support a conclusion that coverage is provided in the . . . policy for occurrences where the insured did not intend or expect to cause harm to the third party." Id. at 1075. Thus, we must consider the pertinent exclusions contained in the policies and their impact on the Builder's claims.

ANALYSIS OF EXCLUSIONS
The exclusions addressed in LaMarche are significantly different from those involved here. Notably, the present policies contain exceptions to the exclusions concerning "Damage To Property" and "Damage To Your Work," unlike the LaMarche policies. See LaMarche, 390 So.2d at 326. The Builder and the Florida Home Builders Association, Inc. (appearing by amicus curiae brief), contend that the exceptions to the exclusions would have no meaning if the policies are interpreted as providing no coverage for the claims. They argue that the policies must be read as a whole and no part of the policies should be viewed as having no effect at all. This argument is consistent with the dictates of CTC Development that reading a policy's coverage provisions together with its exclusions may provide support for a conclusion that the policy provides coverage for a given occurrence. See 720 So.2d at 1075; see also Travelers Indem. Co. v. PCR Inc., 889 So.2d 779, 790 n. 13 (Fla.2004).
Although the Insurer concedes that the exclusion for "Damage to Property" does not apply, the terms of that exclusion are relevant to our review of the policy as a whole. Subparagraph 5 of the exclusion reflects that it does not apply because the work had been completed on the property. Subparagraph 6 excludes coverage for restoration, repair, or replacement that is required because of work that was incorrectly performed. However, an exception to the exclusion is for "property damage" included in the "products-completed operations hazard." If we were to read the policies as suggested by the Insurer, without considering the import of the exclusions, it is arguable that this exclusion and exception to the exclusion would have no meaning or effect in this policy, particularly when considering the nature of the occurrences leading to the Builder's claims. Again, while the exclusion does not create coverage, it is consistent with and provides support for our analysis that the insuring provisions of the policies provide coverage to the Builder's claims.
Similarly, the "Damage To Your Work" exclusion contains an exception for work performed by a subcontractor on the Builder's behalf. The Insurer does not contend that the exclusion applies; instead, it simply reiterates its view that the policy simply provides no coverage for the Builder's claims. If the policies provide coverage, the exception to this exclusion would apply because the damage that occurred was the result of the subcontractors' use of poor soil and improper soil compaction and testing. Accordingly, based on our conclusion that the policies provide coverage, this exclusion does not apply because the exception to the exclusion applies.
The Insurer next contends that even if coverage could exist under the policies, then the exclusion for "Damage To Impaired Property Or Property Not Physically Injured" eliminates coverage for the Builder's claims. The Insurer suggests that application of the exclusion depends on whether the completed structure is viewed as the work or product of the Builder. Also, the Insurer argues that the subject damage is excluded from coverage as damage to "impaired property" because the Builder provided defective houses and *311 failed to fulfill its contract and because the houses could be restored to use by the Builder making the necessary repairs or fulfilling the terms of the contract.
We cannot agree with the Insurer's interpretation of this exclusion. The record establishes that the property involved here qualifies as physically injured, so the portion of the exclusion that addresses property that has not been physically injured does not apply. The property also does not qualify as "impaired property" because that term is defined as "tangible property, other than `your product' or `your work'." (Emphasis added.) Because the homes are undeniably the Builder's work or product, as the terms "your work" and "your product" are defined and used in the policies, this exclusion does not apply.
The Insurer does not suggest that any of the other exclusions eliminate coverage. Instead, the Insurer simply reiterates that the policies do not provide coverage. In light of our analysis of the coverage provisions and the exclusions and our reading the policy provisions in pari materia, we reject the Insurer's argument that the Builder's claims are not covered.

CONCLUSION
For the foregoing reasons, we conclude that the trial court erred in entering judgment in favor of the Insurer. We hold that the CGL policies at issue here provide coverage to the Builder and that the exclusions contained in the policies do not apply. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
Reversed and remanded.
FULMER and STRINGER, JJ., Concur.
NOTES
[1] The author of the cited case is the same as the author of the present case. The issues and arguments addressed in the cited case differ from those here.
[2] See, e.g., Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co., 227 F.Supp.2d 1248 (M.D.Fla.2002); Lassiter Constr. Co., v. Am. States Ins. Co., 699 So.2d 768 (Fla. 4th DCA 1997); Home Owners Warranty Corp. v. Hanover Ins. Co., 683 So.2d 527 (Fla. 3d DCA 1996).
[3] See, e.g., Fejes v. Alaska Ins. Co. Inc., 984 P.2d 519 (Ak.1999) (holding that CGL policy covered claim by general contractor for damage to septic system caused by subcontractor's faulty installation of curtain drain); Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co., 104 P.3d 997, 1003 (Kan.Ct.App.2005) (concluding that damage caused to structure of home as a result of continuous exposure to moisture due to subcontractor's defective materials and work was an occurrence triggering indemnity provisions of CGL policy); O'Shaughnessy v. Smuckler Corp., 543 N.W.2d 99 (Minn.Ct.App.1996) (recognizing that 1986 amendments to "your work" exclusion changed standard CGL policy so as to provide coverage for property damage to a contractor's work when that damage is caused by a subcontractor's defective work), abrogated on other grounds by Gordon v. Microsoft Corp., 645 N.W.2d 393 (Minn.2002); Kalchthaler v. Keller Constr. Co., 224 Wis.2d 387, 591 N.W.2d 169 (1999) (holding that CGL policy granted coverage for property damage to contractor's completed work and that the exclusion for property damage to the insured's work did not apply because an exception to the exclusion restored coverage if the work was performed by a subcontractor).
[4] Patrick J. Wielinski, Insurance for Defective Construction, Beyond Broad Form Property Coverage chs. 11, 16 (2000); James Duffy O'Connor, What Every Construction Lawyer Should Know About CGL Coverage For Defective Construction, Constr. Law. 15 (Winter 2001), WL 21-WTR CONSLAW 15; Thomas J. Casamassima & Jeanette E. Jerles, Defining Insurable Risk in the Commercial General Liability Insurance Policy: Guidelines for Interpreting the Work Product Exclusion, Constr. Law. 48-49 (Jan.1992), WL 12-JAN CONSLAW 3; Jotham D. Pierce, Jr., Allocating Risk Through Insurance and Surety Bonds Apr. 1998, at 193, 198-99 (PLI Real Estate Law & Practice Course Handbook Series No. 425, Apr. 1998), WL 425 PLI/Real 193.