ALTENBERND, Judge,
Concurring.
I concur in the court’s decision to dismiss Allstate’s petition for writ of certiora-ri. I write separately to state more fully my reasons for joining in the dismissal of the petition.
From the pleadings in this case, it appears that John R. Archer, Jr., was driving a vehicle on March 22, 2006, in Daytona Beach, Florida, when he was struck by a car operated by Paul Michael Rucker. Mr. Archer’s wife, Teresa, was a passenger in the vehicle driven by Mr. Archer at the time of the accident. The Archers sustained injuries and sought compensation against Mr. Rucker for their injuries and for loss of consortium.
At the time of this accident, Mr. Rucker was fleeing from the police in a stolen vehicle. The record contains a copy of the police report and the criminal judgment convicting him for driving with a suspended license, grand theft, leaving the scene of an accident involving injuries, and fleeing or attempting to elude the police. It appears that the car he was driving was stolen from a Mr. Robinson, who had insurance on the car with Allstate.
At the time of the accident, Mr. Rucker apparently lived in the same house or apartment as Mr. Robinson. Allstate maintains that Mr. Rucker paid rent to sublease space from Mr. Robinson and that Mr. Rucker is not an additional insured on Allstate’s auto liability policy under the policy’s definition of “resident.” The Archers disagree, arguing that Mr. Rucker was an additional insured as a resident of Mr. Robinson’s home and that *926 he has coverage even if he was operating the insured vehicle as a thief.
The Archers filed a negligence action against Mr. Rucker in Hillsborough County. The complaint did not name Mr. Robinson as a defendant and did not seek any relief from him as the owner of the car. The complaint merely alleged that Mr. Rucker was operating a “motor vehicle” and that he “negligently” caused it to collide with the Archers’ vehicle.
When the Archers filed this complaint, they provided a copy to Allstate and took the somewhat unusual step of asking Allstate to defend Mr. Rucker. Nothing in the record suggests that Mr. Rucker asked Allstate to defend him or that he maintained he had any coverage for his use of Mr. Robinson’s vehicle. Allstate concluded that its duty to defend was dependent on the allegations of the complaint and that the complaint did not identify a vehicle insured by Allstate or allege any factual basis for it to have coverage for Mr. Rucker. It did not file an appearance on behalf of Mr. Rucker, and Mr. Rucker did not otherwise appear in the lawsuit. Mr. Archer obtained a default judgment in the amount of $574,382 against Mr. Rucker, and Mrs. Archer obtained a default judgment in the amount of $349,650.50 against Mr. Rucker.
The Archers have now filed a lawsuit against Allstate containing counts for declaratory relief and damages. Their counts for damages seek collection of the judgments entered against Mr. Rucker; they do not seek to retry any theory of negligence. The Archers seek to depose the adjuster involved in this claim and to review the claims file as discovery directed to their count for declaratory relief. They are seeking information about the coverage issue. In light of them damages theory, they do not need any information about the accident itself.
Allstate maintains that the duty to defend a claim is broader than the duty to pay or indemnify a claim and that the duty to defend is determined by the face of the pleadings. There certainly is ample case law supporting this general proposition. See, e.g., WellCare of Fla., Inc. v. Am. Int’l Specialty Lines Ins. Co., 16 So.3d 904, 906 (Fla. 2d DCA 2009); Biltmore Constr. Co. v. Owners Ins. Co., 842 So.2d 947, 949 (Fla. 2d DCA 2003) (“An insurer’s duty to defend a complaint depends solely on the allegations in the complaint filed by a third party against the insured.”). Allstate maintains that it cannot be held to pay a judgment when it had no legal obligation to defend the lawsuit in which the judgment was entered. In response, the Archers claim that Allstate had actual knowledge about the ownership and insurance on the vehicle described in the complaint and that this knowledge should be sufficient to make up for the lack of allegations under these unusual circumstances. They understandably were hesitant to sue Mr. Robinson under a theory of dangerous instrumentality when his car had been stolen and was involved in an accident while Mr. Rucker was apparently trying to elude the police.
The Archers are not arguing that Mr. Rucker asked Allstate to hire a lawyer to represent him; they apparently maintain that Allstate had a duty to hire the lawyer for Mr. Rucker without any request from him. The Archers do not allege that they have any assignment of rights from Mr. Rucker. They are not alleging that Allstate committed bad faith by failing to settle a claim within policy limits under circumstances when it should have done so. Instead, they maintain that Allstate owed them, as plaintiffs in the underlying action and as third-party beneficiaries to the insurance policy, the duty to defend their adversary against them. The Arch *927 ers claim that Allstate must pay the full default judgments because Allstate did not defend against the Archers’ claims and allowed them to obtain the default judgments. This would seem to be a rather unusual theory of bad faith, but we normally cannot employ a certiorari proceeding to evaluate whether a complaint states a cause of action because that is an issue that can be addressed on direct appeal. I am not willing to declare at this stage in the proceedings that the unusualness of the Archers’ theory should preclude discovery.
I am not entirely certain what information can be derived from the adjuster that may lead to admissible evidence in this case, and I recognize that much of the claim file may be work product in this adversarial context, but I see no irreparable harm in allowing this discovery to proceed under the limitations imposed by the trial court.